[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 18, 2004
THOMAS  K. KAHN
CLERK

No. 04-10228
Non-Argument Calendar

_____

D. C. Docket No. 02-80410-CV-KLR

ANNE MARIE NOLEN, individually,
and as natural heir of the
Estate of Baby_B, and Baby_C,

Plaintiff-Appellant,

versus

BOCA RATON COMMUNITY HOSPITAL, INC.,
a Florida corporation,
GEOFFREY ZANN, M.D.,
JOAN REINSVOLD, RN,
SUSAN SLAVICEK,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 18, 2004)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Anne Marie Nolen appeals from a summary judgment entered against her. The district court held that Nolen's complaint, brought under both the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. section 1395dd, and Florida law, failed as a matter of law. We affirm; the district court properly granted summary judgment in favor of the Boca Raton Community Hospital, Inc. (Hospital).

## I. FACTS AND PROCEDURAL HISTORY

Nolen was a pediatric nurse at the Hospital. She was about twenty-two weeks pregnant with triplets and had insurance coverage. At approximately 5:00 p.m. on May 4, 2000, Nolen arrived at the Hospital for a labor check at the direction of her physician, Dr. Zann. The Hospital admitted Nolen as an outpatient about twenty minutes later. She complained of cramping and a mucous discharge that she feared signaled the onset of labor.

Nolen was first treated by a Hospital nurse, Reinsvold, in the labor and delivery unit of the Hospital, One Family Place. Reinsvold undertook preliminary care processes, including the following measures: taking Nolen's vital signs, taking Nolen's medical history, listening to the unborn babies' hearts, conducting a fetal monitor, and giving an initial examination of Nolen's abdomen. Nolen was attached to a fetal monitor, which detects uterine contractions and uterine

2

irritability, for more than an hour. Reinsvold also paged Dr. Zann to see Nolen shortly after Nolen's admission to One Family Place.

After the initial assessment performed by Reinsvold, Dr. Zann arrived to examine Nolen, who was still on outpatient status, about an hour and ten minutes after she was first registered by the Hospital. Dr. Zann performed a visual exam of Nolen's cervix, took a culture of her vagina, and fully evaluated Nolen's cervix. Nolen's cervix was found to be neither dilated nor thinned. The laboratory results from the culture were negative. Dr. Zann concluded that Nolen's lower uterine segment was consistent with what he expected from a normal pregnancy in this circumstance. Dr. Zann performed an ultrasound to evaluate each of the three fetal heart rates. He did not order further testing.

Dr. Zann concluded that Nolen was not dilated and that she had only one conclusive episodic contraction, which occurred at 5:32 p.m. Another potential episodic contraction occurred at 6:04 p.m., but it was inconclusive because Nolen was being repositioned when the fetal monitor registered that movement. Satisfied that Nolen had been adequately diagnosed and stabilized, Dr. Zann discharged her from the Hospital at 6:48 p.m. He ordered Nolen to keep her scheduled appointment with her perinatologist, Dr. Scott, the next morning.

After leaving the Hospital, Nolen's condition changed for the worse. She

3

testified at deposition that she began cramping after leaving the Hospital. She made no effort to contact Dr. Zann or the Hospital after this change in condition.

When she reached Dr. Scott's office the next morning, Nolen fully described the events of the previous day. Nolen also told Dr. Scott of the change in condition she experienced after leaving the Hospital. Dr. Scott examined Nolen and concluded that she may have been entering pre-term labor on that day because the partial effacement and dilation of her cervix. Dr. Scott determined that Nolen could not have been entering pre-term labor on the previous day when she was at the Hospital in the care of Dr. Zann.

Dr. Scott sent Nolen back to the Hospital to suppress her pre-term labor. Nolen stayed there until May 7, 2000, when she was transferred to Broward General Hospital because it had a superior neonatal care unit. Nolen went into pre-term labor. Her first baby was stillborn, and her other two babies were born alive. Neither of her two live births survived past May 24, 2000, however.

Nolen filed a complaint under 42 U.S.C. section 1395dd on May 3, 2002, and alleged that the Hospital (1) did not provide her with an adequate screening examination, (2) did not stabilize her labor condition adequately, and (3) discharged her in violation of the EMTALA. Nolen received leave from the district court to amend her complaint to include six counts of medical malpractice

4

under Florida law.  Dr. Zann, Reinsvold, and Slavicek, another nurse from the Hospital, were added as defendants on those claims.  The district court declined to exercise jurisdiction over all but one of the state-law claims.

Both parties filed cross-motions for summary judgment after the close of discovery.  The district court granted the motions made by the Hospital and the other defendants on all three counts under the EMTALA and the remaining state law claim.  Nolen does not address the grant of summary judgment by the district court on her state-law claim in her brief before this Court, so any arguments on that claim are waived.  Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003); Kelliher v. Veneman, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

## II.  STANDARD OF REVIEW

Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986) (quoting Fed. R. Civ. P. 56(c)).  Summary judgment should be granted when, after an adequate time for discovery, a party fails to make a showing sufficient to establish

the existence of an essential element of that party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  "We review the district court's rulings on motion for summary judgment de novo, applying the same legal standards that bound the district court."  Carter v. Galloway, 352 F.3d 1346, 1348 (11th Cir. 2003).

## III.  ANALYSIS

Nolen asserts two grounds on which the district court erred in holding that the Hospital gave her an appropriate screening when she entered as an outpatient on May 4, 2000.  First, she contends that the Hospital did not have a standard written screening procedure or, alternatively, that the Hospital did not follow its screening procedure, either of which, she contends, violated the EMTALA.  Second, Nolen argues that the district court should not have considered the evidence submitted by the Hospital that proved Nolen was not, in fact, in pre-term labor when she was examined at the Hospital on May 4, 2000, by her personal physician, Dr. Zann.  Each of these arguments is addressed and rejected below.

As we have previously stated,

> In 1986, Congress enacted EMTALA in response to widely publicized reports of emergency care providers transferring indigent patients from one hospital to the next while the patients' emergency medical conditions worsened.  EMTALA was designed specifically to address this important societal concern; it was not intended to be a federal malpractice statute.  Under EMTALA, hospital emergency

rooms are subject to two principal obligations, commonly referred to as the appropriate medical screening requirement and the stabilization requirement. ... The appropriate medical screening requirement obligates hospital emergency rooms to provide an appropriate medical screening to any individual seeking treatment in order to determine whether the individual has an emergency medical condition. ... If an emergency medical condition exists, the hospital is required to provide stabilization treatment before transferring the individual.

Harry v. Marchant, 291 F.3d 767, 770 (11th Cir. 2002) (en banc).

First, we address Nolen's contention that the Hospital was required to have a written screening procedure. A similar argument was rejected by the Eighth Circuit. Summers v. Baptist Med. Center Arkadelphia, 91 F.3d 1132, 1140 (8th Cir. 1996) (en banc). The Eighth Circuit held that a hospital with emergency screening procedures that were unwritten, in whole or in part, did not violate the EMTALA. Id. (stating that "the hospital did have a screening procedure, even if unwritten in part, and the statute makes no additional requirement"). Nolen's argument that the Hospital was required to have a written screening procedure also fails because a written procedure is not required by the terms of section 1395dd(a).

Nolen alternatively contends that the Hospital did not follow its policies for screening patients in pre-term labor situations. Nolen relies on several policies propagated by the Hospital to create doubt about the quality of screening she received. As long as the Hospital screened Nolen in a manner consistent with the screening that any other patient in the care of a private physician would have

7

received, there can be no liability under the EMTALA. The Hospital presented undisputed evidence that Reinsvold performed exactly the type of screening that would have been given to any other outpatient in Nolen's position according to the only policy that applied to Nolen's case. Because the Hospital met its initial burden of disproving the applicability of the EMTALA, the burden shifts back to Nolen to show the existence of a genuine issue of material fact. Hammer v. Slater, 20 F.3d 1137, 1141 (11th Cir. 1994). Nolen did not meet that burden.

The undisputed record shows that Nolen, if anything, received superior care from the Hospital. Reinsvold promptly summoned Dr. Zann to perform an in-person exam of Nolen, which only 6 percent of similarly situated patients receive. The uncontroverted evidence showed that 94 percent of other patients who came to the Hospital for a labor check did not receive as extensive a screening as the one Nolen received. As the Fourth Circuit has explained, a hospital has every right to tailor its screening procedures to a patient to account for her condition, stated symptoms, and the determinations made by her personal physician. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 879 n.6 (4th Cir. 1992); see also Baker v. Adventist Health, Inc., 260 F.3d 987, 995 (9th Cir. 2001) ("Hospitals are not required to provide patients presenting different symptoms with identical screenings."). Nolen's treatment was provided primarily by her private physician, who was in a

8

better position to provide care beyond the screening mandated by the EMTALA. So long as the Hospital gave to Nolen the same quality screening that it would have given a similarly situated outpatient, there is no violation of the EMTALA. Harry, 291 F.3d at 770.

Second, we turn to Nolen's argument that the district court impermissibly weighed evidence and usurped the function of a jury. We disagree. The Hospital proffered evidence from experts and the principals that confirmed that Nolen received an adequate screening. It was Nolen's responsibility then to present evidence of a genuine issue of material fact, which would have precluded summary judgment. Celotex, 477 U.S. at 322-24, 106 S. Ct. at 2552-54. Nolen did not satisfy that burden, and the district court properly granted summary judgment.

Baber is also instructive on this point. The Fourth Circuit held in Baber that one cursory affidavit from a physician was insufficient to create a genuine issue of material fact as to the adequacy of the screening that the patient received. 977 F.2d at 881-82. Nolen has failed to present even a single affidavit of a physician to dispute the adequacy of the screening provided by the Hospital.

Accordingly, the summary judgment entered by the district court is

**AFFIRMED.**

9