[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16017

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 9, 2006
THOMAS  K. KAHN
CLERK

D. C. Docket No. 04-01247-CV-HS-S

RHONDA KIZZIRE, on behalf of herself
and all others similarly situated,
LARRY CALVIN MARTIN, et al.,

Plaintiffs-Appellants,

versus

BAPTIST HEALTH SYSTEM, INC.,
AMERICAN HOSPITAL ASSOCIATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 9, 2006)**

Before EDMONDSON, Chief Judge, BLACK and FAY, Circuit Judges.

BLACK, Circuit Judge:

Appellants Rhonda Kizzire, Larry Calvin Martin, and Michael R. Dennis appeal the district court's grant of summary judgment in favor of Baptist Health System, Inc. (BHS) and American Hospital Association (AHA) on the majority of their claims and dismissal of their remaining claim. Appellants' primary allegation is that BHS violated its contractual obligations as a charitable organization under 26 U.S.C. § 501(c)(3) by charging uninsured patients more for health care than insured patients. They further allege BHS violated the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, by improperly conditioning emergency medical treatment on their ability to pay. The district court held all claims but the EMTALA claim were barred by res judicata because of prior judgments entered against Appellants in Alabama state court, and dismissed the EMTALA claim for failure to state a claim for relief. We affirm.

## I. BACKGROUND

BHS, a nonprofit entity, is the largest healthcare provider in Alabama. Between 1999 and 2002, Appellants, all uninsured, each received emergency medical care at BHS. After Appellants failed to pay their medical bills, BHS initiated collection suits against them in Alabama state court. Default judgments were entered against Kizzire and Dennis, and Martin consented to judgment in favor of BHS.

2

In 2004, Appellants filed a putative class action complaint against BHS and AHA,[1] alleging numerous federal and state claims.[2] Their primary allegation is that § 501(c)(3), which confers tax-exempt status on nonprofit hospitals, creates a contract between BHS and the federal government to provide charity healthcare for uninsured individuals. They contend BHS has breached its contract with the government by charging uninsured individuals more for health care than it charges insured individuals and argue they can pursue claims for breach of this contract as its intended third-party beneficiaries. They also allege AHA, the national trade association for nonprofit hospitals, conspired with, and aided and abetted BHS to breach its contract with the government by advising BHS on ways to collect inflated rates from uninsured patients. Finally, Appellants allege BHS violated EMTALA by improperly conditioning emergency medical treatment on their ability to pay.

---

[1] This case was one of several clone lawsuits filed in courts across the country on behalf of uninsured patients challenging the billing practices of tax-exempt hospitals. On October 19, 2004, the Judicial Panel on Multidistrict Litigation rejected motions to transfer and consolidate this case and 27 similar cases. *In re Not-For-Profit Hosps./Uninsured Patients Litig.*, 341 F. Supp. 2d 1354, 1355-56 (J.P.M.L. 2004).

[2] Specifically, the complaint alleged nine counts: (1) third party breach of contract; (2) breach of contract; (3) breach of duty of good faith and fair dealing; (4) breach of charitable trust; (5) violations of EMTALA; (6) unjust enrichment/constructive trust; (7) civil conspiracy; (8) aiding and abetting breach of contract; and (9) injunctive/declaratory relief.

3

BHS and AHA filed motions to dismiss, arguing all claims but the EMTALA claim were barred by res judicata because of the judgments entered against Appellants in the state collection suits. BHS also filed a motion to dismiss the EMTALA claim for failure to state a claim upon which relief could be granted. After construing the motions to dismiss on res judicata grounds as motions for summary judgment, the district court granted BHS's and AHA's motions, dismissing the EMTALA claim for failure to state a claim and holding Appellants' remaining claims were barred by res judicata. *Kizzire v. Baptist Health Sys., Inc.*, 343 F. Supp. 2d 1074 (N.D. Ala. 2004). This appeal followed.

## II. STANDARD OF REVIEW

"Barring a claim on the basis of res judicata is a determination of law" that we review de novo. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (citation omitted). When reviewing a district court's grant of summary judgment, we must determine if genuine issues of material fact exist, viewing the evidence and all factual inferences in the light most favorable to the nonmoving party. *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 421 (11th Cir. 1999). We review de novo the district court's grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and

construing them in the light most favorable to the nonmoving party. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

## III.  DISCUSSION

A.    *Res Judicata*

BHS and AHA argue res judicata bars Appellants from litigating the majority of their claims because of the prior judgments entered against them in Alabama state court.  We agree.

When we are "asked to give *res judicata* effect to a state court judgment, [we] must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation." *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985) (quotation omitted).  Because BHS and AHA contend Alabama judgments bar this action, the res judicata principles of Alabama apply.

Under Alabama law, "the essential elements of *res judicata* are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998).  If all four elements are met, any claim that was, or could have been, adjudicated in the prior action is barred from future litigation. *Id.*  Appellants

5

concede the first three elements are met; however, they contend the cause of action presented in this case is different from that in the collection suits.

Alabama uses the "substantial evidence" test to determine whether two causes of action are the same for res judicata purposes. *Id.* at 637. Under this test, res judicata applies when the same evidence substantially supports both actions. *Id.* As the Supreme Court of Alabama has explained:

> [i]t is well-settled that the principal test for comparing causes of action for the application of *res judicata* is whether the *primary right and duty or wrong* are the same in each action. Res judicata applies not only to the *exact legal theories* advanced in the prior case, but to *all legal theories and claims* arising out of the same nucleus of operative facts.

*Old Republic Ins. Co. v. Lanier*, 790 So. 2d 922, 928 (Ala. 2000) (quotations and citations omitted).

In *Reed v. Brookwood Med. Ctr.*, 641 So. 2d 1245 (Ala. 1994), the Supreme Court of Alabama applied these principles to a case very similar to this one. After an emergency room patient failed to pay his bill, the hospital filed a collection suit and obtained a judgment in its favor. *Id.* at 1246. The patient then brought an action against the hospital for fraud, breach of contract, outrage, and defamation, alleging the hospital had wrongfully sued him to collect its bill. *Id.* The court held res judicata barred the subsequent action, reasoning "the manner in which the

6

claim is labeled in the complaint does not necessarily determine the nature of the claim." *Id.* at 1247. Applying the substantial evidence test, the court found the two causes of action were the same because "[e]vidence as to whether Reed was liable on [his] debt is also necessary to prove or disprove Reed's present claims of breach of contract, fraud, outrage, and defamation." *Id.*

Like the plaintiff in *Reed*, Appellants attempt to avoid the res judicata effect of the Alabama judgments by re-labeling their claims. They argue their current claims are based on broad issues regarding BHS's tax-exempt status and thus do not involve the same subject matter or evidence as the prior collection suits, which were confined to the narrow issue of their medical bills. This argument, however, is unavailing for the reasons set out in *Reed*. What is at issue in this case is whether Appellants were denied charity (i.e., free or discounted) health care. Thus, the two lawsuits involve the same nucleus of operative fact—Appellants received emergency medical care at BHS and were charged what they believed to be unreasonable rates. Their current claims are merely different legal theories through which to challenge the reasonableness of the charges.

As such, the same evidence substantially supports both suits. In the collection suits, BHS needed to show Appellants owed the full amount of their bills, which necessarily required the court to determine the reasonableness of the

charges.[3]  In this suit, Appellants would need to show the charges were unreasonable.  Because the same evidence substantially supports both suits, all four elements of res judicata are established under Alabama law, and Appellants are precluded from litigating their current claims.

B.    *EMTALA*

Appellants also seek recovery under EMTALA, arguing BHS violated the statute by conditioning emergency medical treatment on their ability to pay.  The district court dismissed this claim for three reasons:  (1) Appellants failed to allege an EMTALA violation; (2) their claim for "economic and other damages" did not allege compensable injuries under EMTALA; and (3) their claim was time-barred by EMTALA's statute of limitations.  Because we conclude their claim is time-barred, we need not address the alternate reasons discussed by the district court.

Under EMTALA, participating hospitals must screen any individual who comes to its emergency room seeking treatment in order to determine whether the individual has an emergency medical condition.  § 1395dd(a).  If such a condition exists, the hospital must then provide stabilizing treatment before discharging or transferring the patient.  § 1395dd(b).  An EMTALA violation thus arises when a

---

[3] In fact, the reasonableness of the charges was established in the collection suits by an unrebutted affidavit of BHS's Legal Coordinator.  It states, "the claim . . . is just, true, and correct and . . . all just and lawful offsets, payments, and credits have been allowed."

hospital either fails to adequately screen a patient, or discharges or transfers the patient without first stabilizing his emergency medical condition. *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc). EMTALA also prohibits hospitals from delaying medical screening or treatment in order to inquire about an individual's method of payment or insurance status. § 1395dd(h). However, "reasonable registration processes," including asking about an individual's insurance status, are allowed if they do not delay screening or treatment. 42 C.F.R. § 489.24(d)(4).

Under § 1395dd(d)(2)(C), a civil action under EMTALA must be brought within two years of the date of the alleged violation. Appellants' claim is therefore time-barred because, as Appellants concede, they all received emergency care at BHS more than two years before filing their complaint. They resist this result, arguing BHS committed ongoing EMTALA violations by engaging in wrongful collection practices, which should toll the statute of limitations. Congress enacted EMTALA, however, to remedy the narrow problem of emergency rooms turning away indigent patients. *Harry*, 291 F.3d at 770. There is simply no indication Congress intended EMTALA to address hospitals' bill collection practices as well. We therefore affirm the district court's dismissal of Appellants' EMTALA claim because it is time-barred.

9

## IV.  CONCLUSION

The district court did not err in holding the majority of Appellants' claims were barred by res judicata.  Nor did the district court err in dismissing Appellants' EMTALA claim.  We accordingly affirm the district court's decision.

**AFFIRMED**.