[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 30, 2006
THOMAS K. KAHN
CLERK

No. 06-12426
Non-Argument Calendar

_____

D. C. Docket No. 04-01436-CV-ORL-31DAB

BENJAMIN LEVI JOHNSON,

Plaintiff-Appellant,

versus

HEALTH CENTRAL HOSPITAL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 30, 2006)**

Before DUBINA, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Benjamin Levi Johnson, proceeding pro se, appeals the district court's entry

of summary judgment in favor of the defendant, Heath Central Hospital ("Health

Central"), in this action alleging violations of the Emergency Medical Treatment

and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and discrimination based on race, in violation of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983. On appeal, Johnson argues that as part of his emergency medical treatment at Health Central, he was not afforded the same level of care and treatment as other patients in similar circumstances. More specifically, he asserts that based on his race, Health Central failed to perform certain EMTALA-required procedures prior to releasing him from its facility.[1] After careful review, we affirm.

We review a district court's rulings on a motion for summary judgment de novo, using the same legal standard as the district court. Nolen v. Boca Raton Community Hosp., Inc., 373 F.3d 1151, 1153-54 (11th Cir. 2004). "Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (internal quotations omitted); Fed. R. Civ. P. 56(c). "Summary judgment should be granted when, after an adequate time

---

[1] Johnson also alleged a violation of Florida's Baker Act, Fla. Stat. § 394.467, which allows a person to be placed involuntarily in a treatment facility if clear and convincing evidence indicates that the person is mentally ill, and inter alia, there is a substantial likelihood that, based on recent behavior, the person will inflict serious bodily harm on himself or on another person. We discern no error in the entry of summary judgment on this claim, as Johnson failed to present any evidence showing that he should have been placed in "involuntary inpatient placement." Id. at § 394.467(1).

for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Id. The evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In order to defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Rather, the non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The relevant facts are straightforward. On September 29, 2004, Johnson filed his complaint alleging that on November 5, 2000, Health Central emergency physicians diagnosed him with an overdose of the psychiatric medication benzodiazepine and admitted him to the ICU under "suicide precautions." According to Johnson, Health Central staff understood the seriousness of his medical condition, but failed to perform the "customary charcoal procedure to remove the pills" and stabilize him. He also asserted that when he became combative, the ICU staff became angry with his psychotic conduct and treated him disparately from other patients in similar circumstances. The following day, on November 6, 2000, Johnson was released from the Health Central facility. He says that he was still in a psychiatrically disturbed state and that Health Central should

3

have stabilized his condition prior to release, or transferred him to a mental health facility for further treatment.

In the complaint, Johnson alleged the following injuries resulting from his alleged premature release: (1) he suffered from 60% hearing and tone recognition loss; (2) he acquired a "schizaffective" disorder associated within non-convulsive seizures and a neuropsychiatric brain disorder; and (3) he was arrested for irrational conduct,[2] resulting in two years imprisonment. Johnson requested damages in the amount of four million dollars for past and future physical pain, mental anguish, bodily injuries, inconvenience, medical expenses, loss of earnings, and diminished earning capacity.

Health Central moved for summary judgment, alleging that Johnson had been transported to Health Central's emergency room with an alleged drug overdose and cocaine intoxication on November 5, 2000 and was admitted to ICU, after which he became fairly combative and ultimately left against medical advice. Health Central pointed out that in the course of discovery, it had served a request for admissions on Johnson, to which he never responded. Citing Rule 36 of the Federal Rules of Civil Procedure, Health Central noted that requests for admissions are automatically deemed admitted if not answered within 30 days and that the

---

[2]About four hours after his release from the hospital, Johnson was arrested for assaulting a law enforcement officer. He pled guilty to the charge and was sentenced to a 22-month term of imprisonment.

4

matters therein conclusively established unless the court on motion permitted withdrawal or amendment of the admissions. Notably, by not responding to the request for admissions, Johnson admitted that: he was evaluated by an emergency medical physician; he was placed under the care of Dr. Pradeep K. Vangala, who admitted him to ICU and ordered a psychiatric consultation; and he left the Health Central facility against medical advice.

Health Central argued further that Johnson also admitted, by not responding, that he received the following medical care, screening, and testing: (1) an emergency physician evaluation; (2) an admission under Dr. Vangala and to the ICU; (3) 1:1 monitoring by a nurse: (4) continuous cardiac, respiratory rate, oxygen saturation, and blood pressure monitoring; (5) intravenous ("IV") fluid therapy; (6) urinalysis; (7) culture and toxicology screening; (8) chest x-ray; (9) blood work; and (10) assessment for ulcer risk. In support of summary judgment, Health Center provided the affidavit of Dr. Charles L. LoPiccolo, its expert forensic psychiatrist who reviewed Johnson's medical records, to corroborate the facts admitted by Johnson's failure to respond to the request for admissions. Health Central also argued that the EMTALA's stabilization requirement did not apply because Johnson was not "transferred" as defined under EMTALA, but rather was admitted to the ICU. According to Health Central, its EMTALA

5

obligations ceased once Johnson was admitted and received treatment, and any actionable claims would be remedied exclusively under state tort law.

In further support of its motion, Health Central submitted: (1) its request for admissions filed August 25, 2005; and (2) Dr. LoPiccolo's curriculum vitae and affidavit in which he stated that his examination of the medical records revealed no evidence of negligence as to Johnson's transfer to ICU or in the stabilization and that Health Central's actions were well within the standard of medical care. Dr. LoPiccolo also noted that the records showed that Johnson was seen by an emergency physician; was admitted to the hospital; was sent to the ICU upon orders of Dr. Vangala for observation on a 1:1 basis; received continued monitoring for cardiac issues, respiration, blood pressure, and oxygen saturation; and received IV fluid therapy, emergency room analysis, culture, and toxicology screening, chest x-ray, blood work-up, and ulcer risk assessment. Finally, Dr. LoPiccolo noted that a psychiatric consultation was ordered but Johnson left the hospital "of his own free will" and signed a written acknowledgment that he was leaving the hospital against the advice of his physician.

In response to Health Central's motion, Johnson submitted that his own affidavit established that material issues of fact remained as to whether he left the hospital by his own choice or was forced out and as to whether he was stabilized when he was forced to leave. In his affidavit, Johnson attested that he requested to

6

use the phone at Health Central and the nurse repeatedly told him he could not use the phone. After he continued asking, however, he was given a form to sign and signed it after being told he had to sign the form before using the phone. The nurse then removed his IVs and took him to a telephone. He "called my boss, and after about five (5) minutes my boss came to pick me up." He said he never read the form he signed. Johnson did not want to leave Health Central but was forced to leave by the nurse and, approximately four hours after he left, he was still "out of control" and "hallucinating," which resulted in his arrest by the police.

The district court granted Health Central's motion for summary judgment. The district court found that the sole question was whether Health Central complied with the EMTALA by providing appropriate medical screening and stabilization. Based on Dr. LoPiccolo's affidavit, the court found that Johnson had received both appropriate medical screening and stabilization treatment. The district court found that Johnson offered no rebuttal to the foregoing facts, except to suggest that he should have received a "charcoal test," and that his lay opinion did not present a material fact sufficient to prevent the entry of summary judgment. The district court went on to explain that the purpose of the EMTALA was to prevent "patient dumping" and not to act as a substitute for state law claims of medical negligence. The court found that the failure to perform a particular non-EMTALA-mandated medical procedure was not a genuine issue of material fact

7

because the omission did not rise to the level of a failure to appropriately screen and stabilize the patient, within the meaning of the EMTALA. Finally, the court found that Johnson's statement that he was forced to leave Health Central was "patently ridiculous" because the evidence showed that he had abandoned his treatment and left Health Central after signing an acknowledgment that his leaving was contrary to the advice of Health Central physicians. This appeal followed.

On appeal, Johnson urges that whether Health Central's failure to perform a "charcoal procedure" and a "psych consultation" violated the EMTALA or the Civil Rights Act is a genuine issue of material fact that prevented entry of summary judgment against him. We disagree.

Under the EMTALA, covered hospitals must screen for an emergency medical condition any individual who is admitted to its emergency room seeking treatment. See 42 U.S.C. § 1395dd(a). If such a condition exists, the hospital must then provide stabilizing treatment before discharging or transferring the patient. Id. at § 1395dd(b). An EMTALA violation thus arises when a hospital either (1) fails to adequately screen a patient, or (2) discharges or transfers the patient without first stabilizing his emergency medical condition. See Harry v. Marchant, 291 F.3d 767, 770 (11th Cir. 2002) (en banc).

Addressing the "appropriate medical screening" requirement, we have held that "[s]ection 1395dd(a) is not designed to redress a negligent diagnosis by the

8

hospital; no federal malpractice claims are created. As long as a hospital applies the same screening procedures to indigent patients which it applies to paying patients, the hospital does not violate this section of the Act." Holcomb v. Monahan, 30 F.3d 116, 117 (11th Cir. 1994); see also 42 U.S.C. § 1395dd(a). As for the second requirement, the "stabilization" requirement, we have explained that "[t]here is no duty under EMTALA to provide stabilization treatment to a patient with an emergency medical condition who is not transferred" and that in such a situation, a plaintiff is not without recourse because "remedies provided by state malpractice and tort law remain available to redress negligent patient care by hospitals." Harry, 291 F.3d at 775.

Here, the district court did not err by granting Health Central's motion for summary judgment because the evidence, viewed in the light most favorable to Johnson, fails to establish that Health Central violated his rights under the EMTALA. As to the "appropriate medical screening" requirement, no evidence suggested that Johnson was treated differently from other patients. The only evidence that Johnson provided was his own lay opinion that the "customary charcoal procedure to remove the pills" should have been performed along with a psychological examination, which he was scheduled to undergo but voluntarily left the facility before receiving. As to the "stabilization" requirement, the record fails to establish that Johnson was either "transferred" or "discharged" within the

9

meaning of the EMTALA.[3]  On this record, the district court correctly entered summary judgment on Johnson's EMTALA claim.

We likewise are unpersuaded by Johnson's argument that the district court erred in its analysis of his race discrimination claim under 42 U.S.C. § 1983.  From our review, it is implicit that the district court found the claim to be <u>frivolous</u>, after observing that Johnson's EMTALA claims, which rely on the same factual basis as the § 1983 claim, were "frivolous."  In any event, Health Central was entitled to summary judgment on the claim since Johnson established neither a violation of a constitutional right nor that when the alleged violation occurred, Health South -- a private entity -- was acting under color of state law.  Cf. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (enumerating elements of § 1983 claim).

**AFFIRMED.**

---

[3]  Under the EMTALA, "'[t]ransfer' is defined as 'the movement (including the discharge) of an individual outside of a hospital's facilities'" and reference to a patient who is "transferred . . . will apply equally to a patient who is discharged." <u>Harry</u>, 291 F.3d at 768 n.1 (<u>citing</u> 42 U.S.C. § 1395dd(e)(4) (1994)).