**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13484
Non-Argument Calendar
_____

LISA MATTHEWS,
   an individual,
LORI MOODY,
   as Healthcare Power of Attorney for Lisa
   Mathews,

*Plaintiffs-Appellants,*

*versus*

ASCENSION ST. VINCENTS CLAY COUNTY HOSPITAL,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:22-cv-00184-BJD-LLL
_____

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Lisa Matthews and Lori Moody appeal the district court's order dismissing their *pro se* complaint against Ascension St. Vincent's Clay County Hospital ("the Hospital") that alleged claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 C.F.R. § 489.24, and Florida Statutes § 395.1041. They also appeal its order denying their post-dismissal motions to alter or amend judgment under Fed. R. Civ. P. 59(e) and for leave to file an amended complaint under Fed. R. Civ. P. 15. First, they argue that the district court erred in dismissing their EMTALA claim for failure to state a claim because they sufficiently pled that the Hospital both failed to adequately screen Matthews and failed to stabilize her emergency medical condition before discharging her. Second, they argue that the district court erred in denying their Rule 59(e) and Rule 15 motions because it erred in dismissing their complaint and in concluding that they should not be given leave to amend their initial complaint due to undue delay and undue prejudice to the Hospital. Third, they argue that the district court erred in dismissing their Fla. Stat. § 395.1041 claim for failure to state a claim because they sufficiently pled that the Hospital improperly screened Matthews and did not treat her for malnutrition before discharging her despite detecting it.

## I. DISCUSSION

*A. Motion to Dismiss*

We review a district court's order granting a motion to dismiss for failure to state a claim *de novo*. *EEOC v. STME, LLC*, 938 F.3d 1305, 1313 (11th Cir. 2019).

*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will be liberally construed. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). However, a court may not "serve as de facto counsel for a party, or . . . rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168-69 (citation modified). Licensed attorneys who represent themselves do not receive the benefit of liberal construction of their pleadings. *Olivares v. Martin*, 555 F.2d 1192, 1194 (5th Cir. 1977).

We use a two-step process to evaluate whether claims survive Rule 12(b)(6), first determining the pleading requirements for the cause of action, and second, considering whether the "well-pleaded factual allegations . . . plausibly suggest an entitlement to relief." *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1347 (11th Cir. 2025) (citation modified). The complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Drawing on "judicial experience and common sense," we will determine whether a claim is facially plausible by examining whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caterpillar*,

4                    Opinion of the Court                    22-13484

147 F.4th at 1347 (quoting *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 867 (11th Cir. 2023), and *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012)).

Courts must accept the allegations in the complaint as true and construe those allegations "in the light most favorable to the plaintiff." *Id.* at 1346 (citation modified). However, we are "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation modified). We have stated that "[i]n the absence of a developed factual record, or undisputed matters which can be judicially noticed, a district court is not equipped to make plausibility determinations on complex scientific issues." *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) (reversing the dismissal of an amended complaint because the plaintiffs' theory of causation involved a complex scientific issue, which, taken as true, properly alleged causation, and the court lacked the expertise to find that an alternative theory of causation was more plausible without a more developed record to support such a finding).

EMTALA was enacted to address concerns about "emergency care providers transferring indigent patients from one hospital to the next" without treating "the patients' emergency medical conditions," and "was not intended to be a federal malpractice statute." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc). "Under EMTALA, hospital emergency rooms are subject to two principal obligations, commonly referred to as the appropriate medical screening requirement and the stabilization requirement."

*Id.* (citing 42 U.S.C. § 1395dd).  A hospital violates EMTALA when it "either fails to adequately screen a patient, or discharges or transfers the patient without first stabilizing his emergency medical condition." *Kizzire v. Baptist Health Sys.*, 441 F.3d 1306, 1310 (11th Cir. 2006).

Section 1395dd's screening requirement provides that if hospitals screen patients "in a manner consistent with the screening that any other patient . . . would have received, there can be no liability under the EMTALA." *Nolen v. Boca Raton Cmty. Hosp.*, 373 F.3d 1151, 1155 (11th Cir. 2004); *see* 42 U.S.C. § 1395dd(a).

The stabilization requirement provides that "after a hospital determines that a person suffers from an 'emergency medical condition' it must provide whatever treatment, within its capabilities, is needed to stabilize the condition before transferring or discharging the patient." *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994) (quoting 42 U.S.C. § 1395dd(b)).  An emergency medical condition is defined as:

> [A] medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in . . . (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part[.]

42 U.S.C. § 1395dd(e)(1)(A).

Stabilization is defined as "provid[ing] such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." *Id.* § 1395dd(e)(3)(A). To establish that a hospital violated the stabilization requirement, a plaintiff must show that (1) the patient had an emergency medical condition, (2) the hospital knew of the condition, and (3) the patient was not stabilized before being transferred or discharged. *See Holcomb*, 30 F.3d at 117. Because EMTALA mandates stabilization only if the hospital transfers or discharges a patient, the statute does not mandate a standard of care for patients who are not transferred or discharged. *Harry*, 291 F.3d at 771. Transfer under EMTALA "means the movement (including the discharge) of an individual outside a hospital's facilities." 42 U.S.C. § 1395dd(e)(4). The Fourth Circuit upheld the dismissal of an EMTALA claim where the patient was diagnosed with and treated for a less serious condition than the condition that which later resulted in the patient's death—a condition the hospital failed to diagnose—because the hospital satisfied EMTALA's screening requirement by providing the patient with the same medical screening it would other patients with similar symptoms and satisfied the stabilization requirement by treating the condition it had detected. *Vickers v. Nash Gen. Hosp.*, 78 F.3d 139, 145 (4th Cir. 1996).

Section 489.24 does not provide a cause of action separate from EMTALA, but rather clarifies the Act's requirements. *See* 42

C.F.R. § 489.24.  While not included in the text of § 1395dd, § 489.24 states that:

> If a hospital has screened an individual under paragraph (a) of this section and found the individual to have an emergency medical condition, and admits that individual as an inpatient *in good faith* in order to stabilize the emergency medical condition, the hospital has satisfied its special responsibilities under this section with respect to that individual.

*Id.* § 489.24(d)(2)(i) (emphasis added).

We have not directly addressed the application of § 489.24 in a published decision.  The Fourth Circuit interpreted the good faith requirement to mean that "a hospital cannot admit an individual solely to evade liability under EMTALA."  *Williams v. Dimensions Health Corp.*, 952 F.3d 531, 536 (4th Cir. 2020).  Thus, while admission of a patient for treatment is a defense to an EMTALA claim, that defense can be countered by alleging, and ultimately proving, that a hospital did not admit the patient in good faith.  *Id.* at 537 ("The good faith requirement simply clarifies that any admission must be legitimate and not in name only.").

Here, the district court properly determined that Moody and Matthews failed to allege sufficient facts to state a screening claim under EMTALA, because they merely alleged that the Hospital violated EMTALA by "failing to perform a simple urinalysis," causing Matthews "irreparable harm to [her] organs."  While this is arguably an unartfully stated claim that the Hospital did not perform a urinalysis test on Matthews after learning that she was

uninsured despite providing the test to insured patients exhibiting similar symptoms, this Court may not "rewrite an otherwise deficient pleading," even for *pro se* litigants. *Campbell*, 760 F.3d at 1168 69; *see Nolen*, 373 F.3d at 1155. Matthews and Moody alleged that the Hospital admitted Matthews upon her arrival and performed tests on her, detecting Matthews's malnutrition and vitamin deficiency, which comports with EMTALA's requirement that hospitals provide medical screening to patients who come to the hospital's emergency room. 42 U.S.C. § 1395dd(a). However, they did not allege the Hospital used different screening procedures for Matthews upon learning she was uninsured, which is required to properly plead a failure to screen claim under EMTALA. *Nolen*, 373 F.3d at 1155. As Matthews and Moody did not allege, even unartfully, that the Hospital provided urinalysis tests to similarly medically situated insured patients, their claim that the failure to provide Matthews with a urinalysis test caused her harm is more akin to a medical malpractice claim than a disparate treatment claim under EMTALA. *Id.* at 1155; *Marchant*, 291 F.3d at 770 (noting that EMTALA "was not intended to be a federal malpractice statute"). Therefore, in their original complaint, Matthews and Moody failed to properly state a claim that the Hospital violated EMTALA's screening requirement.

However, while a close issue, the district court erred in determining that Matthews and Moody failed to allege sufficient facts to state a stabilization claim under EMTALA when liberally construing their allegations. *See Caterpillar*, 147 F.4th at 1348; *Holcomb*, 30 F.3d at 117. In their complaint, Matthews and Moody alleged

that after Matthews was admitted to the Hospital and diagnosed with malnutrition, Matthews's condition declined throughout her stay, with Matthews "look[ing] worse than when she arrived" before the Hospital discharged her. Moreover, they alleged that the Hospital failed to provide Matthews with food and that two hours after her discharge, Matthews collapsed and was taken to another hospital. Though they also alleged that Matthews lacked an appetite and that ostomy bags, like Matthews's, often interfere with the absorption of nutrients, even if Matthews's condition was caused by her lack of appetite and ostomy bag, these facts do not preclude a failure to stabilize claim, which only requires that a patient's known emergency medical condition was not stabilized by a hospital before the patient was discharged. *Holcomb*, 30 F.3d at 117. Taken as true, these facts stated a plausible claim that the Hospital failed to stabilize Matthews' malnutrition, a condition which the Hospital had knowledge of, and that this failure led to Matthews collapsing shortly after her discharge. *Id.* at 117; *Caterpillar*, 147 F.4th at 1346.

The district court concluded that malnutrition is not an emergency medical condition under the meaning of EMTALA, but it provided no citation or support for that conclusion, and "[i]n the absence of a developed factual record, or undisputed matters which can be judicially noticed, a district court is not equipped to make plausibility determinations on complex scientific issues." *Adinolfe*, 768 F.3d at 1175. To be an emergency medical condition under EMTALA, the condition must "manifest itself by acute symptoms of sufficient severity (including severe pain)," and Matthews and

Moody alleged that Matthews was experiencing "severe abdominal pain" immediately before her discharge.    42 U.S.C. § 1395dd(e)(1)(A).  Moreover, the condition must be one which is "reasonably expected" to result in negative health effects without "immediate medical attention," and Matthews collapsed and fell seriously ill two hours after her discharge, which, viewed in the light most favorable to Matthews and Moody, suggests that Matthews had an unstabilized emergency medical condition. *Caterpillar*, 147 F.4th at 1346; 42 U.S.C. § 1395dd(e)(1)(A).  Questions like whether malnutrition is an emergency medical condition and whether the Hospital's alleged failure to treat the malnutrition impacted Matthews's subsequent health issues cannot be resolved solely with "judicial experience and common sense," because the medical concerns inherent in those questions required a more developed factual record to answer. *Caterpillar*, 147 F.4th at 1347; *see Adinolfe*, 768 F.3d at 1175.

The Hospital's reliance on the Fourth Circuit's *Vickers* case is misplaced. That case stands for the proposition that hospitals are required to stabilize an emergency medical condition that they detect after screening. *Vickers*, 78 F.3d at 145.  Here the Hospital detected Matthews's malnutrition but is alleged to have failed to stabilize it.  This Court has also determined that the stabilization requirement mandates hospitals to stabilize a patient's known emergency medical condition before discharging them. *Holcomb*, 30 F.3d at 117.  The Hospital's argument that EMTALA's stabilization requirement ceases to apply once a patient is admitted does not comport with this Court's precedent, which states that an

EMTALA violation can arise when a hospital "discharges . . . [a] patient without first stabilizing his emergency medical condition." *Kizzire*, 441 F.3d at 1310. Here Matthews and Moody alleged that the Hospital failed to treat, and therefore stabilize, Matthews' malnutrition.

Therefore, because the district court erred by dismissing the complaint's stabilization claim under the EMTALA, we reverse the dismissal of that claim and allow Matthews and Moody to move forward with that claim, as stated in their original complaint, to the next stage of litigation. *Caterpillar*, 147 F.4th at 1346.

## B. Motion to Amend and Motion to Alter or Amend Judgment

We review for an abuse of discretion the denial of leave to amend a complaint but review *de novo* "the underlying legal conclusion of whether a particular amendment to the complaint would be futile." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1093-94 (11th Cir. 2017) (citation modified). We review the denial of a Rule 59(e) motion to alter or amend judgment for abuse of discretion. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023).

In general, a district court should freely grant leave to amend a complaint when justice so requires, unless amending the complaint would be futile. *Chang*, 845 F.3d at 1094. In addition, a district court must give a *pro se* plaintiff at least one opportunity to amend his complaint before dismissing the action with prejudice, even if the plaintiff does not request leave to amend until after final

judgment, unless the plaintiff clearly indicates that they do not want to amend their complaint, or a more carefully drafted complaint could not state a claim. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). Unless one of these exceptions applies, the district court must advise the *pro se* plaintiff of the deficiencies in their complaint and provide an opportunity for amendment before dismissing it with prejudice. *Id.* at 1291-92.

"When deciding whether to grant leave to amend, a court considers five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, and (5) futility." *Blackburn v. Shire US Inc.*, 18 F.4th 1310, 1317-18 (11th Cir. 2021). Without the presence of at least one of these factors to justify a district court's decision to refuse a party the opportunity to amend their complaint, leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)(2)). Leave to amend would be futile "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). "A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings." *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013), *overruled on other grounds by CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017).

Without evidence of bad faith or prejudice to the defendant, the normal elapse of time during litigation in and of itself does not rise to the level of prejudice, though "prejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery." *Id.* at 1187 (citation modified). We have upheld a district court's denial of leave to amend because of undue delay when a litigant moved the court to amend his complaint over a year after receiving notice that his theory of recovery did not state a sufficient claim and over two years after the initial complaint was filed. *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236-37 (11th Cir. 2005). However, when faced with a motion to dismiss, complainants are "not required to accept [the opposing party's] argument in its motion to dismiss as true," and thus are not required to amend their complaint. *See Woldeab*, 885 F.3d at 1291.

A dismissal without prejudice is tantamount to a dismissal with prejudice when the running of the statute of limitations would preclude the plaintiff from refiling his complaint. *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018).

We review "the denial of a Rule 59 motion for abuse of discretion." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). The deadline for filing Rule 59(e) motions is 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). However, in order to be considered an entered final judgment, orders granting motions to dismiss under Rule 12(b)(6) require a judgment to be entered in a separate document from the order itself. If such separate document is not

entered, the order is deemed to be entered 150 days after the entry of the order.  Fed. R. Civ. P. 58(a), (c)(2)(B).

"The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur*, 500 F.3d at 1343 (citation modified).  "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (citation modified).  We have upheld a denial of a Rule 59(e) motion when the plaintiff "failed to establish a clear error of law . . . as required." *Gulisano v. Cohen*, 34 F.4th 935, 945 (11th Cir. 2022).  We found a denial of a Rule 59(e) motion to be an abuse of discretion when the district court improperly denied a motion to dismiss a third-party petition opposing a criminal forfeiture order, because the district court, by misapplying the relevant statute and rule, erroneously found that the petitioner's filing was timely. *United States v. Marion*, 562 F.3d 1330, 1341-42 (11th Cir. 2009).

The statute of limitations on an EMTALA claim is two years from the date of the violation.  42 U.S.C. § 1395dd(d)(2)(C).  Here, the statute of limitations for Matthews and Moody's EMTALA claim expired in February 2022, two years after the alleged EMTALA violation occurred, and thus the court's dismissal without prejudice (on August 4, 2022) effectively functioned as a dismissal with prejudice.  42 U.S.C. 1395dd(d)(2)(C); *Mickles*, 887 F.3d at 1280.

However, the court erred when it dismissed their complaint without granting them leave to amend and in finding that

amendment would be futile.  District courts are required to grant *pro se* plaintiffs leave to amend a complaint before a dismissal with prejudice, unless they indicate that they did not wish to amend it, or amendment would be futile.  *Woldeab*, 885 F.3d at 1291.  The court here found that amendment would be futile, asserting that Matthews and Moody's proposed amended complaint also did not state a claim under EMTALA, but the court erred, because the proposed amended complaint did state a valid EMTALA claim.  The proposed amended complaint incorporated the original complaint and further stated that the Hospital deviated from its typical screening procedures by failing to provide Matthews with a urinalysis test, because patients with similar symptoms would have received that test.  Taken as true, these allegations were sufficient to state a screening claim under EMTALA.  *Nolen*, 373 F.3d at 1155.  Further, the proposed complaint alleged that malnutrition is an emergency medical condition and that the hospital failed to stabilize Matthews before discharging her, which states a valid failure to stabilize claim under EMTALA.  *See Holcomb*, 30 F.3d at 117.  Therefore, the proposed amended complaint was not futile, as the allegations therein, taken as true, would survive a motion to dismiss from the Hospital. *See L.S. ex rel. Hernandez*, 982 F.3d at 1332.

The district court also found that the proposed amended complaint would unduly prejudice the Hospital because of the undue delay in amending the original complaint, because Matthews and Moody could have amended as a matter of course once they received the Hospital's motion to dismiss but chose not to.  But Moody and Matthews were "not required to accept [the Hospital's]

argument in its motion to dismiss as true" and were under no obligation to amend their complaint simply because the Hospital moved to dismiss it. *See Woldeab*, 885 F.3d at 1291. The record does not support a finding of undue delay: the proposed amended complaint does not contain new theories of recovery and it does not require additional discovery, as no discovery had occurred. *Tampa Bay Water*, 731 F.3d at 1187. Nor is there evidence of any resultant prejudice to the Hospital or bad faith on the part of Moody and Matthews. *Id.* at 1186. Here, only six months passed between the filing of the complaint and Matthews and Moody's motion to amend following its dismissal.

Additionally, Matthews and Moody's Rule 59(e) motion was timely filed. The district court did not enter a separate judgment from its order dismissing their complaint, so the order was deemed to be entered as a judgment 150 days after it was filed on August 4, 2022, which was well after when Matthews and Moody filed their Rule 59(e) motion 33 days later, on September 6, 2022. Fed. R. Civ. P. 58(a), (c)(2)(B).

The district court also erred in denying the Rule 59(e) motion on the merits because its conclusion that amendment would be futile was in error, as was its failure to allow them the opportunity to amend before dismissing their complaint. *L.S. ex rel. Hernandez*, 982 F.3d at 1332; *Woldeab*, 885 F.3d at 1291. One of the grounds for granting a Rule 59(e) motion is when the district court commits a "manifest error of law," which this Court has stated is an error that constitutes "a 'wholesale disregard, misapplication, or

failure to recognize controlling precedent.'"  *Arthur*, 500 F.3d at 1343.  By not granting *pro se* plaintiffs Moody and Matthews leave to amend their complaint despite binding precedent from this Court requiring it to do so under these circumstances, the district court committed a manifest error of law.  *See Arthur*, 500 F.3d at 1343; *Cohen*, 34 F.4th at 945.

Thus, the district court erred in denying Matthews and Moody, *pro se* plaintiffs, the opportunity to amend their complaint before dismissing it, a dismissal which functionally operated as a dismissal with prejudice.  *Woldeab*, 885 F.3d at 1291.  It was not futile to grant Matthews and Moody leave to amend because their proposed amended complaint added additional facts to state a valid claim under EMTALA and 42 C.F.R. § 489.24 and amendment would not have resulted in undue prejudice to the Hospital.  *See L.S. ex rel. Hernandez*, 982 F.3d at 1332; *Blackburn*, 18 F.4th at 1317-18.  Without the presence of futility, undue delay, or another factor articulated by this Court, the district court should have afforded them the opportunity to amend their complaint once before dismissal.  *Foman*, 371 U.S. at 182; *Blackburn*, 18 F.4th at 1317-18.  Therefore, we vacate the district court's order denying them leave to amend or alter the judgment with respect to their EMTALA claims; accordingly, on remand, Matthews and Moody may move to the next stage of litigation on their amended complaint with respect to both their screening and their stabilization claim under EMTALA.

*C. Florida Law Claim*

Florida Statutes section 395.1041 provides that "any person who suffers personal harm as a result of a violation of this statute may recover damages in a civil action against the responsible hospital administrative or medical staff or personnel." *Ramsay v. S. Lake Hosp.*, 357 So. 3d 253, 256 (Fla. 5th Dist. Ct. App. 2023). Under Florida law, "a person seeking to pursue a civil cause of action solely within the confines of Chapter 395 needs only to establish that the plaintiff was 'dumped' and that damages resulted," and they need not comply with the medical malpractice pre-filing requirements of Chapter 766. *Porter, Brown, Chitty & Pirkle, M.D.P.A. v. Pearson*, 793 So. 2d 1012, 1012 (Fla. 3rd Dist. Ct. App. 2001). "All individuals who present at a hospital's emergency room must be screened for emergency medical conditions and either stabilized or transferred to another medical facility in the event the determination is made that an emergency condition exists." *Agency for Health Care Admin. v. Baker County Med. Servs.*, 832 So. 2d 841, 843 n.3 (Fla. 1st Dist. Ct. App. 2002). Section 395.1041 allows patients to recover "against the responsible hospital administrative or medical staff or personnel," but makes no mention of recovery directly from hospitals themselves. Fla. Stat. § 395.1041(5)(b). A Florida appellate court noted that "[t]he statute does not expressly prohibit or permit liability of the hospital under respondeat superior," but did not answer the question of whether a patient can recover from a hospital under such a theory. *Cintron v. St. Joseph's Hosp.*, 112 So. 3d 685, 687 (Fla. 2d Dist. Ct. App. 2013). We have noted the similarities between the requirements imposed on hospitals by section

395.1041 and EMTALA. *Baker County Med. Servs. v. United States AG*, 763 F.3d 1274, 1277 (11th Cir. 2014).

Here, the district court did not err in dismissing Moody and Matthews's claim under section 395.1041, because Moody and Matthews sued the Hospital directly and the plain text of the statute only permits suits "against the responsible hospital administrative or medical staff or personnel." Moreover, the district court dismissed the claim without prejudice, and Matthews and Moody could have refiled the claim naming the proper defendant. Thus, the district court did not err by dismissing their section 395.1041 claim, denying their Rule 59(e) motion with respect to that claim, or denying them leave to amend that claim prior to dismissing it without prejudice.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**