[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14860

_____

D.C. Docket No. 1:11-cv-23233-JLK

ALLAN CAMPBELL,

Plaintiff - Appellant,

versus

AIR JAMAICA LTD.,
CARIBBEAN AIRLINES,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 8, 2014)

Before MARCUS, Circuit Judge, and COOGLER[*] and BOWEN,[**] District Judges.

MARCUS, Circuit Judge:

---

[*] Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama, sitting by designation.

[**] Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

First, Allan Campbell's Air Jamaica flight from Kingston to Fort Lauderdale was delayed. Hours passed. Once given the go-ahead to board, he says, he was recalled to the boarding gate and forced to reschedule to another departure the next day -- when his permanent resident alien card would expire. Air Jamaica charged him a $150 fee to change flights and refused to put him up in a hotel. Terminal repairs left him to spend the night outside, exposed to the elements. As Campbell put it in his complaint, the ordeal took its toll: he was hospitalized with a heart attack after falling ill during the delay, seeking medical help upon arrival, and collapsing at his home.

Campbell's claims for damages are governed by the Montreal Convention, a multilateral treaty setting rules for international air travel. He seeks recovery against Air Jamaica and Caribbean Airlines under Article 19, which concerns damages due to delay, and Article 17, which addresses accidents that injure passengers on board a plane or during the course of embarkation or disembarkation. The district court dismissed Campbell's amended complaint for lack of subject matter jurisdiction. We disagree because Article 33 of the Montreal Convention grants the district court the power to hear his claims. Nevertheless, we affirm the dismissal on alternative grounds to the extent that Campbell failed to state claims against the defendants. Campbell did state an Article 19 claim against Air Jamaica, but only for economic damages from the $150 change fee. He stated

2

no Article 17 claim, however, because he did not allege injuries caused by an "accident" that occurred "on board the aircraft or in the course of any of the operations of embarking or disembarking." And Campbell stated no claim against Caribbean Airlines, which he did not name in the substance of the amended complaint. We therefore vacate the dismissal of the Article 19 claim against Air Jamaica for damages from the $150 fee, and remand only as to that issue. We affirm the dismissal of all other claims.

I.

On December 12, 2011, pro se plaintiff Allan Campbell filed an amended complaint against Air Jamaica Ltd. and Caribbean Airlines (collectively, "Defendants") that alleged the following essential facts.[1] Campbell had a ticket for a September 8, 2009, Air Jamaica flight from Kingston, Jamaica, to Fort Lauderdale, Florida. He arrived three hours early for the flight, which was then delayed four hours. Campbell was cleared to board at the check-in counter and given a boarding pass with a seat number. After passing through security and getting "the go-ahead to board," he proceeded to embark on the flight, but was recalled back to the boarding gate, where he was told that he would not be accommodated on the flight and should arrange to depart on the next flight, the

---

[1] Campbell filed his initial complaint on September 7, 2011, which the district court sua sponte dismissed before service was effectuated for failure to state a claim and failure to state adequate grounds for subject matter jurisdiction. The court denied Campbell's motion to vacate its judgment but allowed Campbell fifteen days to file an amended complaint.

following day.  When Campbell returned to the check-in counter, an agent told him to pay a $150 change fee to travel on a flight the next day.  He eventually paid the fee.  Meanwhile, the agent refused to accommodate Campbell at a hotel that night, which left him stranded at the airport.  Because of airport construction, Campbell claimed, he spent the night outside the terminal building in adverse weather.

The complaint alleged that the airline agent acted negligently by "bumping [Campbell] from the flight and abandoning" him, as well as by charging him for rebooking.  Campbell stated that the delay and abandonment were the sole cause of his heart attack.  He claimed that he started feeling ill from the effects of the initial four-hour flight delay at the Kingston airport, that he sought medical attention at the Fort Lauderdale airport, and that he collapsed at home in Miami, where he was ultimately taken to a hospital.  Campbell stated that his injuries were aggravated by additional delay when his daughter was unable to leave work to pick him up from the airport.  The amended complaint alleged that Defendants had breached Article 19 of the Montreal Convention, which caused Campbell to suffer $5,000,000 in general, unspecified damages.

Air Jamaica moved to dismiss the amended complaint, arguing that the district court lacked subject matter jurisdiction because Campbell did not state a cognizable Montreal Convention claim, that any such claims were time-barred, and that Campbell failed to state a claim for negligence or breach of contract under

4

state law.  Caribbean Airlines moved to dismiss on the ground that Campbell's action was time-barred, though it conceded that the district court had subject matter jurisdiction pursuant to the Montreal Convention.  Campbell responded to Air Jamaica's motion by arguing that both Articles 17 and 19 of the Montreal Convention covered this case, since the "accident" occurred when Campbell was in the process of boarding the flight.  He also argued that his action was not time-barred because the amended complaint did not constitute the filing of a new case and his original complaint was filed within the statute of limitations.  Air Jamaica and Caribbean Airlines replied, reiterating their earlier arguments.

The district court dismissed the case with prejudice for lack of subject matter jurisdiction, concluding that Campbell did not state claims under the Montreal Convention.  The court found that he sought only "damages for the suffering of pure emotional distress and anxiety, which are not recoverable under Article 19." In addition, the district court explained that Article 17 provided Campbell no relief because neither flight delay nor bumping constitute a requisite "accident."  The court did not reach the question of whether the claims were time-barred.  Campbell filed a timely appeal.[2]

II.

---

[2] After initial briefing from the parties, we set the case for oral argument and appointed Stephen F. Rosenthal, of the law firm Podhurst Orseck, P.A., to represent the previously pro se Appellant. We commend the exceptional pro bono service Rosenthal provided his client and this Court.

5

A.

We review de novo the district court's dismissal for lack of subject matter jurisdiction.  Foy v. Schantz, Schatzman & Aaronson, P.A., 108 F.3d 1347, 1348 (11th Cir. 1997).  We also review de novo whether the district court properly construed the terms of the Montreal Convention.  Piamba Cortes v. Am. Airlines, Inc., 177 F.3d 1272, 1280 (11th Cir. 1999).

We hold the allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Accordingly, we construe Campbell's pleadings liberally.  Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).  "Yet even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

B.

The district court stated that it dismissed Campbell's claims "with prejudice . . . for lack of subject matter jurisdiction."  But the Montreal Convention grants the district court the power to hear the case.  Article 33 provides that a plaintiff may bring an action for damages under the Convention "before the court at the place of destination."  The amended complaint alleges, and the Defendants do not

6

dispute, that Campbell's flight landed in Fort Lauderdale, Florida, making the United States District Court for the Southern District of Florida a court of competent jurisdiction.

Despite describing its order as jurisdictional, the district court justified dismissal on the ground that Campbell failed to state a claim under the Convention.[3]  In other words, at issue was not whether the district court had the power to adjudicate Montreal Convention claims brought by Campbell, but instead whether Campbell had alleged sufficient facts to support a claim under Articles 17 or 19.  Such a failure to state a cause of action does not defeat jurisdiction.  Bell v. Hood, 327 U.S. 678, 682 (1946).  After all, "[w]hether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."  Id.; accord Barnett v. Bailey, 956 F.2d 1036, 1040-41 (11th Cir. 1992); Delta Coal Program v. Libman, 743 F.2d 852, 855 (11th Cir. 1984).  While "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is

_____

[3] For example, the district court noted that "Defendant Air Jamaica argues that this Court lacks subject matter jurisdiction, because the Amended Complaint fails to allege a claim under the Montreal Convention."

wholly insubstantial and frivolous," those exceptions do not apply here.  Bell, 327 U.S. at 682-83.

Defendants' arguments for dismissal thus sound in Rule 12(b)(6) ("failure to state a claim upon which relief can be granted"), not 12(b)(1) ("lack of subject-matter jurisdiction").  The district court recognized this, regardless of the label it applied, because the court dismissed with prejudice, which is fitting for failure to state a claim, instead of without prejudice, which is appropriate for jurisdictional decisions.  See Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977)[4] (per curiam) ("Dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit, whereas a dismissal on jurisdictional grounds alone is not on the merits and permits the plaintiff to pursue his claim in the same or in another forum."); see also Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1341 (11th Cir. 2005) ("[I]f the district court actually lacked jurisdiction . . . , the court would have lacked the power to dismiss . . . with prejudice.").

Though the district court suggested that it lacked subject-matter jurisdiction, we can affirm the dismissal with prejudice on the alternate ground that Campbell failed to state a claim upon which relief could be granted.  See, e.g., Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247, 254-55 (2010) ("The District Court here had

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

jurisdiction . . . . Since nothing in the analysis of the courts below turned on the mistake, a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion. . . . [W]e proceed to address whether petitioners' allegations state a claim."); Bell v. Health-Mor, Inc., 549 F.2d 342, 345 (5th Cir. 1977) ("The district court . . . should not have dismissed the complaint for lack of subject matter jurisdiction.  However, if the district court is correct . . . , then the plaintiffs' claims are subject to dismissal for failure to state a claim upon which relief could be granted.  Therefore, in the interests of judicial economy we will discuss the substantive issues raised in the district court's opinion."); see also, e.g., Powers v. United States, 996 F.2d 1121, 1123 (11th Cir. 1993) ("We affirm the judgment of the district court dismissing this action, but for reasons other than those used by the district court.").

Therefore, we turn to whether Campbell's amended complaint stated a claim under Articles 17 or 19 of the Montreal Convention.

## C.

We can quickly dispense with Campbell's action against one defendant because he has not stated a claim against Caribbean Airlines.  While the amended complaint names "Carribean Airlines" as a defendant in the case heading, it at no other point mentions Caribbean Airlines.  Instead, the amended complaint states that Campbell purchased a ticket from "Air Jamaica" for a flight on "Air Jamaica

airline." Campbell makes no allegations that Caribbean Airlines took any actions toward him, much less caused him any injuries cognizable under the Montreal Convention. Nor does the amended complaint allege that the two companies were associated or connected in any way that would make Caribbean Airlines liable for Campbell's harm. We affirm the dismissal with prejudice of all claims against Caribbean Airlines.

### III.

### A.

We next take up Campbell's argument that he stated an Article 19 claim for damages against Air Jamaica. Articles 17 and 19 of the Montreal Convention are found in Chapter III, which addresses the "Liability of the Carrier and Extent of Compensation for Damage." Article 19, titled "Delay," provides:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Convention for the Unification of Certain Rules for International Carriage by Air (Montreal Convention) art. 19, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 350.

The parties agree that Article 19 permits the payment of economic damages but does not contemplate compensation for emotional loss or physical injury. <u>See,</u>

e.g., <u>Vumbaca v. Terminal One Grp. Ass'n L.P.</u>, 859 F. Supp. 2d 343, 367 (E.D.N.Y. 2012) ("Article 19 only applies to <u>economic</u> loss occasioned by delay in transportation." (quotation omitted)).  The district court found that Campbell did not plead any economic injuries and therefore could not recover any Article 19 damages.

Campbell first argues that the amended complaint pled economic loss in the form of the $150 change fee charged for the replacement flight.   Air Jamaica concedes that "perhaps a $150 change fee" is compensable, though it argues that such a <u>de minimus</u> claim should not be allowed to proceed on its own.

The district court erred in failing to acknowledge that Campbell adequately alleged economic damages in the form of the $150 change fee.  The court did not mention the change fee in its order, but the fee meets each of the Article 19 requirements.  As pled, it constituted economic loss.  The complaint can be construed as claiming that the fee was "occasioned by" the delay: he was forced to pay $150, which would not have occurred had he not been forced by the airline to take the next day's flight.  And Campbell alleged that the Defendants' agents did not take reasonable measures in avoiding the delay, as he claimed that they were "negligent in recalling the plaintiff to the boarding gate while the plaintiff was embarking and bumping the plaintiff from the flight and abandoning the plaintiff."

11

Moreover, there is no de minimis bar to Article 19 jurisdiction.  In the lone case cited by Air Jamaica in support of its de minimis argument, a district court denied leave to amend a complaint when a party sought to add low-value claims not originally included.  See Vumbaca, 859 F. Supp. 2d at 361 ("[W]hile plaintiff now seeks to add claims for economic harm, these claims will not be considered because they are de minimis and were not sought in the complaint.").  The Convention does not mention, and we know of no court that has imposed, a de minimis requirement for an otherwise validly pled Article 19 claim.  Here, Campbell's amended complaint identified the fee.  Construing this pleading liberally, we conclude that Campbell adequately stated an Article 19 claim against Air Jamaica for economic damages in the form of the $150 fee.

## B.

However, Campbell did not state a claim under Article 19 for any other damages caused by delay.  Campbell expressly concedes that medical expenses are "carve[d] out . . . from the range of damages compensable under Article 19 flowing from flight delays."

Campbell instead contends that inconvenience from a delayed flight can support a cognizable claim for Article 19 damages.  Courts have disagreed about whether and to what degree inconvenience damages may be recovered under

12

Article 19.[5]  But we need not address today whether and to what degree inconvenience damages are recoverable under Article 19 because Campbell has not pled that he suffered any harm due to inconvenience.  While he mentioned delays that, in theory, could have caused inconvenience, he at no point claimed that he actually suffered an inconvenience injury.  Instead, liberally construed, Campbell's pro se amended complaint alleged that the delay caused him damages in the forms of physical illness, mental anxiety, and the $150 fee.  Campbell does not state an Article 19 claim for inconvenience damages.

IV.

Campbell did not state a claim under Article 17 of the Montreal Convention.  That article, titled "Death and Injury of Passengers -- Damage to Baggage," provides in relevant part that "[t]he carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."  Montreal Convention art. 17, S. Treaty Doc. No. 106-45.  An Article 17 claim thus has three elements: (1) an

---

[5] For example, in Vumbaca, a district court concluded after surveying cases that "[m]ere inconvenience does not support a claim under Article 19."  859 F. Supp. 2d at 367-68.  Another district court reached the opposite result in Daniel v. Virgin Atlantic Airways, Ltd., 59 F. Supp. 2d 986 (N.D. Cal. 1998):  "Time is money, after all, and . . . the inconvenience of being trapped for hours in an unfamiliar airport is a compensable element of damages for delay in air travel . . . even in the absence of economic loss or physical injury."  Id. at 993.

13

accident; (2) that caused death or bodily injury; (3) that took place on the plane or in the course of any of the operations of embarking or disembarking.

Campbell's allegation that he was rescheduled to a later flight does not amount to an Article 17 "accident," which the Supreme Court defines as "an unexpected or unusual event or happening that is external to the passenger." El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 165 n.9 (1999) (quoting Air France v. Saks, 470 U.S. 392, 405 (1985)). "This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." Air France, 470 U.S. at 405. To determine whether an event is "unexpected or unusual," we "look at a purely factual description of the events that allegedly caused the aggravation injury suffered by the plaintiff." Krys v. Lufthansa German Airlines, 119 F.3d 1515, 1521 (11th Cir. 1997). The fact that a series of events is alleged to have been caused by "crew negligence" does not affect whether or not the event itself, as experienced by the passenger, was unexpected.

Rare is the passenger unacquainted with the ubiquity of air travel delay. See In re Deep Vein Thrombosis Litig., MDL 04-1606 VRW, 2007 WL 3027351 (N.D. Cal. Oct. 12, 2007) aff'd sub nom. Twardowski v. Am. Airlines, 535 F.3d 952 (9th Cir. 2008) ("[D]elays in air travel are a 'reality.'"). The Supreme Court has recognized that "routine travel procedures" do not amount to Article 17 accidents.

14

Air France, 470 U.S. at 404-05.  The practice of "bumping" -- when an airline intentionally causes a passenger to reschedule to a later flight shortly before departure -- falls into this category because it is systematic, widely practiced, and widely known.  There is nothing accidental about it.  See Weiss v. El Al Isr. Airlines, Ltd., 433 F. Supp. 2d 361, 363 (S.D.N.Y. 2006) aff'd sub nom. Weiss v. El Al Isr. Airlines, 309 F. App'x 483 (2d Cir. 2009) ("Bumping is an airline industry practice whereby passengers are denied seats due to intentional overselling, which is intended to minimize the number of empty seats due to cancellations.").  Like routine delays for weather or maintenance, bumping may be unpleasant, but it is not unexpected or unusual.  As a general matter, then, an Article 17 accident does not occur merely because a passenger is bumped from a flight.

Indeed, no case has found bumping to be an Article 17 accident under the Montreal Convention or the previous and corresponding Warsaw Convention. Instead, the decisions that discuss bumping either treat it as delay under Article 19 or label it contractual non-performance that is not preempted by the Montreal Convention.  See, e.g., Wolgel v. Mexicana Airlines, 821 F.2d 442, 445 (7th Cir. 1987) ("We conclude that the Warsaw Convention does not provide a cause of action for bumping."); Igwe v. Nw. Airlines, Inc., CIV.A. H-05-1423, 2007 WL 43811 (S.D. Tex. Jan. 4, 2007) ("[U]nder the facts of this case, Article 19 does

15

encompass 'bumping,' and the [plaintiffs'] claims fall directly within the scope of the Convention."); Weiss, 433 F. Supp. 2d at 366 (holding that bumping claims are "not preempted by the Montreal Convention"); Sassouni v. Olympic Airways, 769 F. Supp. 537, 540 (S.D.N.Y. 1991) ("Very few courts have confronted the issue of the application of Article 19 to being 'bumped' from an airline flight. However, those that have, hold uniformly that damages arising from a delay in transportation caused by being bumped, are governed by Article 19.").

Campbell, then, cannot recover under Article 17 based on bumping. He argues, however, that his was no run-of the-mill bumping, even though his amended complaint states that the airline's agent was negligent in "bumping the plaintiff." Campbell insists that the airline did not follow standard procedures for bumping: Campbell had been given a boarding pass with a seat number; he was required to pay a change fee; and two years later airline records indicated he had flown on September 8, not the next day when he actually traveled. These alleged irregularities are irrelevant to Article 17 analysis, however, which measures only whether the event was unusual from the viewpoint of the passenger, not the carrier. See Krys,119 F.3d at 1522 (describing a passenger's allegation that flight crew negligently failed to make an emergency landing for his heart attack as "the continuation of the flight to its scheduled point of arrival"). Therefore, whether internal airline records documented a bumping in no way informs whether an

16

accident occurred.  In addition, in framing the facts, we look only to "what precise event or events allegedly caused the damage sustained by the plaintiff."  Id. at 1521 n.10.   For example, it does not matter whether Campbell had been issued a boarding pass with a seat assignment because he does not allege that this fact aggravated his injuries.  At bottom, then, Campbell states that he "proceeded to embark on [the] flight but was recalled back to the boarding gate" and "was told that he would not be accommodated on the flight."  These allegations do not state a claim for an Article 17 accident because it is not unusual or unexpected for an airline to prevent passengers from boarding and to force them to reschedule on a later flight.

Campbell's amended complaint also states that "[t]he defendant refused to accommodate the plaintiff at a hotel," which left Campbell stranded at the airport. He further alleges that he was forced to spend the night outside because the airport was under repairs and that he became ill when exposed to adverse weather.  But Campbell cannot recover under Article 17 because, whether or not this amounted to an "accident," he does not allege that the airline abandoned him while he was aboard the aircraft or during the process of embarkation or disembarkation.

The Montreal Convention does not define "embarking" or "disembarking." In applying these terms, we consider the totality of the alleged circumstances. Marotte v. Am. Airlines, Inc., 296 F.3d 1255, 1260 (11th Cir. 2002).  Three factors

17

are particularly relevant: "(1) the passenger's activity at the time of the accident; (2) the passenger's whereabouts at the time of the accident; and (3) the amount of control exercised by the carrier at the moment of the injury." Id.  No individual factor is dispositive.  Instead, they form a single analytical base.  Id.  We have also noted that we consider the imminence of a passenger's actual boarding of a flight because embarking requires "a close connection between the accident and the physical act of boarding the aircraft."  Id.

None of these factors suggest that the alleged abandonment occurred during embarkation.  First, Campbell was not engaged in an activity characteristic of boarding when he was refused overnight accommodations.  Compare Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 618 (7th Cir. 1989) ("[Police were] questioning Schroeder about a bomb threat.  This activity is not even remotely related to a passenger's embarking or disembarking from an airplane."), and Martinez Hernandez v. Air France, 545 F.2d 279, 282 (1st Cir. 1976) ("[T]he passengers had already emerged from the aircraft, descended the stairs from the plane to the ground, traveled via bus or foot from the plane to the terminal, and presented their passports to the Israeli authorities.  On these facts we do not believe it can be said that the passengers were still engaged in any activity relating to effecting their separation from the aircraft."), with Marotte, 296 F.3d at 1260 (11th Cir. 2002) ("[T]he party had their boarding passes in hand and were attempting to

18

board the plane when the attack took place."), and <u>Day v. Trans World Airlines, Inc.</u>, 528 F.2d 31, 33 (2d Cir. 1975) ("[T]he plaintiffs had already surrendered their tickets, passed through passport control, and entered the area reserved exclusively for those about to depart on international flights.  They were assembled at the departure gate, virtually ready to proceed to the aircraft.").

Second, the location of the alleged abandonment was considerably removed from the point of boarding.  Campbell claims that the airline left him stranded at the Kingston airport, where he was forced to spend the night outside the terminal exposed to the elements.  The overnight events "happened at a considerable distance from the departure gate."  <u>McCarthy v. Nw. Airlines, Inc.</u>, 56 F.3d 313, 317-18 (1st Cir. 1995).  Campbell does not claim that he was in a restricted or secure area, or that he spent the night "in a section of the airport that is not open to the general public."  <u>Marotte</u>, 296 F.3d at 1260; <u>see</u> <u>McCarthy</u>, 56 F.3d at 318 ("We believe it is no mere happenstance that the plaintiff has not cited -- and we have been unable to deterrate -- a single instance in which Article 17 has been found to cover an accident that occurred within the public area of a terminal facility.").

Third, Air Jamaica exercised no control over Campbell when it declined to pay for his hotel.  After being turned away from his original flight, Campbell "was acting at [his] own direction and was no longer under the 'control' of" Air Jamaica.

19

Maugnie v. Compagnie Nationale Air France, 549 F.2d 1256, 1262 (9th Cir. 1977).

Campbell was a "free agent[] roaming at will through the terminal" -- and beyond

it. Day, 528 F.2d at 33. Finally, the alleged abandonment occurred long before

Campbell's boarding was imminent. If anything, Campbell complains that

boarding was not imminent, and that the airline refused to make his wait more

manageable.

After examining location, activity, control, and imminence, we conclude that

the airline's alleged refusal to provide accommodations, and Campbell's overnight

stay outside the terminal, did not occur in the course of any of the operations of

embarking or disembarking. All told, Campbell states no Article 17 claim upon

which relief can be granted.

## V.

Defendants urge that we affirm the dismissal of Campbell's claims on the

alternative ground that his amended complaint was untimely because it was not

filed within the Montreal Convention's two-year limitations period. We decline

their invitation because Rule 15(c) allows Campbell's amended complaint to relate

back to his timely original complaint.

Campbell filed his initial complaint on September 7, 2011, within the two-

year limitations period. After the district court sua sponte  dismissed without

prejudice and with leave to file an amended complaint within fifteen days,

Campbell filed an amended complaint on December 12, 2011, outside of the two-year window.  Though the district court dismissed on other grounds, it noted that it was "inclined to reject the limitations' period argument, because it would be patently unfair to bar a plaintiff's suit on the basis of the limitations period where the initial Complaint was filed within the applicable period and dismissed without prejudice to refile."

Article 35 of the Montreal Convention specifies that "[t]he right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to arrive, or from the date on which the carriage stopped."  Montreal Convention art. 17, S. Treaty Doc. No. 106-45.  But Article 35 also provides that "[t]he method of calculating that period shall be determined by the law of the court seised of the case."  Id.  Meanwhile, Federal Rule of Civil Procedure 15(c) allows an amended pleading to relate back to the date of a complaint filed within the limitations period when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  This condition for relation back is satisfied here because Campbell's original complaint alleged the same essential facts that formed the basis for the claims pled in his amended complaint.

21

However, the parties dispute whether the Montreal Convention permits Rule 15(c) relation back.

Our Circuit has not previously addressed the application of Rule 15(c) to the two-year limit in the Montreal Convention or its predecessor, the Warsaw Convention. Courts that have confronted similar problems generally distinguish between two doctrines: tolling, deemed impermissible, and relation-back, considered to be consistent with the Convention. Tolling occurs when a party invokes equitable principles to stop the running of a statute of limitations so that an untimely claim may still be asserted. See, e.g., Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998) ("'Equitable tolling' is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances."). With tolling, no claim need be filed within the limitations period. Courts have refused to apply local tolling rules to Convention claims. See, e.g., Husmann v. Trans World Airlines, Inc., 169 F.3d 1151, 1154 (8th Cir. 1999); Fishman v. Delta Air Lines, Inc., 132 F.3d 138, 143-45 (2d Cir. 1998). By contrast, relation back can occur only when amendments are made to a timely filed claim that involved the same facts and circumstances. See Fed. R. Civ. P. 15(c).

Therefore, when an original complaint is timely filed and the only effect of amendment is to allow the plaintiffs to conform their pleading to the requirements

22

of the Convention, "[g]ranting leave to amend has no prohibited tolling effect."
Pennington v. British Airways, 275 F. Supp. 2d 601, 606-07 (E.D. Pa. 2003); see
In re Air Crash Near Rio Grande P.R. on Dec. 3, 2008, 11-MD-02246-KAM, 2012
WL 3962906, at *3-4 (S.D. Fla. Sept. 11, 2012) (unpublished) ("[Plaintiffs] seek to
bring a claim pursuant to the Montreal Convention, rather than state law, based
upon the same conduct, transaction and occurrence set out in the original
complaint.  [Plaintiffs] seek to apply the relation-back doctrine, not tolling.
. . . Rule 15(c) permits application of the relation-back doctrine."); Raddatz v. Bax
Global, Inc., 07-CV-1020, 2008 WL 2435582 (E.D. Wis. June 16, 2008)
(unpublished) ("[T]he court finds that Rule 15(c) applies to any amendments to
Raddatz's original complaint and his cause of action would be timely under the
two-year limitation period set forth in the Warsaw Convention.").  In Motorola,
Inc. v. MSAS Cargo Int'l, Inc., 42 F. Supp. 2d 952, 955-56 (N.D. Cal. 1998), a
district court refused to allow a plaintiff to use Rule 15(c) to add a new defendant
after the limitation period expired.  But, as a later court observed, "the real evil at
issue in Motorola . . . was the fact that the plaintiff . . . was attempting to use the
complaint amending mechanism of Rule 15(c) in order to commence an entirely
new and separate suit against a party otherwise protected by the" limitations
period.  Pennington, 275 F. Supp. 2d at 606.  Here, where the alleged facts and the

23

named defendants are consistent across the two complaints, there is "no prohibited tolling effect."  Id. at 607.

Our review of the Montreal Convention leads us to agree with this trend permitting Rule 15(c) relation-back in cases like Campbell's.  Treaty interpretation starts with the text.  Medellín v. Texas, 552 U.S. 491, 506 (2008).  But the language alone does not tell us whether Rule 15(c) concerns the method of calculating the two-year period, which the Convention leaves to the court of the forum.  See Fishman, 132 F.3d at 144 ("[T]he language of Article [35] is reasonably susceptible to conflicting interpretations.").  Rule 15(c) does not involve computation in a narrow sense, which could cover only questions like the time of day by which filings must be entered.  But Rule 15(c) does address the calculation of the limitations period for amended claims when a plaintiff raised similar issues in an earlier filing.

When the text is ambiguous, we turn to the treaty's drafting history.  Saks, 470 U.S. at 396 ("Treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." (quoting Choctaw Nation of Indians v. United States, 318 U.S. 423, 431-432 (1943)); Zicherman v. Korean Air Lines Co., 516 U.S. 217, 226 (1996) ("Because a treaty ratified by the United States is not only the law of this land . . . ,

24

but also an agreement among sovereign powers, we have traditionally considered as aids to its interpretation the negotiating and drafting history (travaux préparatoires) and the postratification understanding of the contracting parties.").

The preliminary draft of the Warsaw Convention presented at a 1925 Paris conference on private aeronautical law provided that "[t]he method of calculating the period of limitation, as well as the causes of suspension and interruption of the period of limitation, shall be determined by the law of the court having taken jurisdiction." Second International Conference on Private Aeronautical Law Minutes 267 (Robert C. Horner & Didier Legrez trans., 1975). In other words, the original version would have allowed the application of local tolling rules. At the 1929 Warsaw Conference, however, the Italian delegation proposed an amendment that would replace that provision in the interests of predictability and simplicity with "a plea in bar; that is to say, that after two years any action dies and is no longer admissable." Id. at 110. The French delegation, while "not at all opposed to the Italian proposal," noted that there was still a need to indicate that "the law of the forum court . . . will fix how, within the period of two years, the court will be seized, because in all the countries of the world suits are not brought in the same way." Id. at 111. The delegates ultimately voted to remove the allowance for forum courts to determine "the causes of suspension and interruption of the period of limitation." But the delegates retained the provision instructing that "[t]he

25

method of calculating the period shall be determined by the law of the court having taken jurisdiction." Id. at 219.  This same language was carried over into Article 35 of the Montreal Convention.

This drafting history suggests that the delegates intended to avoid the application of tolling rules, which would make it "very difficult for the shipper . . . to know when the interruption or suspension begins." Id. at 110; see Fishman, 132 F.3d at 144 ("Almost every court that has reviewed the drafting minutes of the Convention, including the district court in this case, has rejected the contention that Article [35] incorporates the tolling provisions otherwise applicable in the forum.").  On the other hand, the delegates showed no opposition to principles of relation-back.  To the contrary, the Italian delegation described its bright-line proposal as having the following effect: "if two years after the accident no action has been brought, all actions are extinguished."  Campbell did bring an action within two years, avoiding the foreseeability problems characteristic of tolling.  Moreover, the adopted language specifically permits a forum court to set methods of calculating the two-year period.  In sum, we agree with the consensus of courts that the Montreal Convention permits the application of Rule 15(c) relation back, at least when the amending plaintiff identifies the same defendants named in the original complaint.  Campbell's amended complaint was timely under Article 35.

VI.

26

We vacate the dismissal of Campbell's Article 19 claim against Air Jamaica for economic damages in the form of the $150 change fee and remand only for proceedings concerning this claim.  Because Campbell pled no other claims for damages cognizable under Articles 17 or 19, and he stated no claim against Caribbean Airlines, we affirm on alternative grounds the dismissal with prejudice of the remainder of the claims raised in Campbell's complaint.

**AFFIRMED** in part, **VACATED** in part, and **REMANDED**.