[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12231
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cv-60050-JIC

CALVIN C. CALDWELL, JR.,

Plaintiff-Appellant,

versus

FORT LAUDERDALE AIRPORT TASK FORCE,
Fort Lauderdale-Hollywood International Airport,
DRUG ENFORCEMENT AGENCY,
PHIL MACDONALD,
Officer, Broward County Sheriff,
DUSTIN THOMPSON,
Officer, Broward County Sheriff,
OKEEFE,
Officer, Broward County Sheriff, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 9, 2016)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Calvin Caldwell appeals the district court's *sua sponte* dismissal of his 42 U.S.C. § 1983 civil-rights lawsuit against the Fort Lauderdale Airport Task Force, the Drug Enforcement Agency, the Broward County Sheriff's Department and four of its officers, and the Miami Police department and two of its officers.  Caldwell alleged that these defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments by unlawfully detaining him at the Fort Lauderdale and Miami airports and seizing money that he was traveling with.

According to the allegations in Caldwell's complaint, which we accept as true for purposes of this appeal, in February 2012, Caldwell flew into the Fort Lauderdale Airport from Columbus, Ohio.  As he exited the plane, he was approached by Officer Phil MacDonald, who, after asking Caldwell what he was doing in town, took Caldwell's carry-on bag and opened it in the terminal. MacDonald then asked Caldwell to accompany him to the terminal interdiction office.  Caldwell requested to have his attorney present, but no attorney was called. When Caldwell and MacDonald arrived at the interdiction office, Caldwell asserts, he was shoved into the room and his cell phones were thrown against the wall. Officers O'Keefe and Poole threatened to taser him and called him a racial slur.

2

In the interdiction office, Officers O'Keefe and Poole emptied the contents of Caldwell's luggage and found cash wrapped in clear plastic bags. Caldwell said he had $25,000 in business capital. Despite Caldwell's request to have the money counted in his presence, Officer MacDonald left the room to count the cash with a machine. He returned an hour-and-a-half later and handed Caldwell a receipt for $23,340, though Caldwell claimed he had $25,000. Caldwell was told to gather his possessions and leave. The officers failed to return Caldwell's Florida driver's license, debit card, and cell phones. Caldwell reported the missing items, and his driver's license was returned a few hours later. Caldwell took the receipt for the $23,340 to his attorney.

In December 2012, Caldwell flew into the Miami International Airport from Columbus, Ohio. As he walked through the terminal, he noticed that he was being tailed by Officer O'Keefe. Eventually, O'Keefe accosted and then detained him until Officers MacDonald and Poole arrived. The officers took Caldwell to the terminal interdiction office, where he met Detective Quintas. Caldwell explained that he was in town to give a deposition at his attorney's office. MacDonald took and opened his carry-on bag, which again contained cash. At Quintas's direction, Caldwell counted the currency, placed it in a clear plastic bag, and initialed the amount. After a wait of nearly two hours, the officers conducted a dog sniff. In Caldwell's opinion, the dog did not alert to the currency. The officers gave

3

Caldwell a receipt for $5,790 and let him go. Thirty days later, the Department of Justice contacted Caldwell and told him to file a claim for the return of the seized currency. He did so.

For relief, Caldwell requested the return of all seized currency plus interest, attorney's and filing fees, punitive damages, and reimbursement of the cost of his flights and other additional lost funds.

After granting Caldwell, who was in custody at the time, leave to proceed *in forma pauperis*, a magistrate judge *sua sponte* screened his complaint, pursuant to 28 U.S.C. §§ 1915A & 1915(e)(2). In a report and recommendation ("R&R"), the magistrate judge recommended that the complaint be dismissed "without prejudice" for failure to state a claim under 28 U.S.C. § 1915(e)(2)(b)(ii).

The magistrate judge implicitly construed Caldwell's complaint as asserting one claim: a procedural due-process claim under the Fourteenth Amendment based on the defendants' retention of the seized currency. Finding that Caldwell had "an adequate post-deprivation state remedy for the alleged wrongful taking of his property in the form of a tort action for conversion," the magistrate judge concluded that no procedural due-process violation had occurred. *See Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009) (stating that no procedural due-process violation has occurred if an adequate post-deprivation remedy is available, such as a civil cause of action for wrongful conversion of personal property under

4

state law).  The magistrate judge also noted that Caldwell was seeking the return of his funds in a pending civil forfeiture action filed by the government against the funds.

In March 2015, Caldwell filed a response to the magistrate judge's R&R. He explained that he had "reviewed the rule of law and case law given in support" by the magistrate judge and found "no basis to object or argue against said conclusion."  He agreed that "dismissal without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) is fair and just."  Caldwell stated that he would prosecute his claims in the pending forfeiture action.

Caldwell, through counsel, filed claims for the seized currency in the civil forfeiture action, which the government initiated in August 2012.[1]  *See* CM/ECF for U.S. Dist. Ct. for S.D. Fla., case no. 0:12-cv-61508-LSS.  He argued that the currency had been unlawfully seized in violation of the Fourth Amendment. Eventually, the case was set for a bench trial on March 31, 2015.  About two weeks before the trial date, however, the government filed a motion for voluntary dismissal without prejudice.  *See* Fed. R. Civ. P. 41(a)(2).  The court granted the motion and dismissed the action on March 17, 2015.[2]

---

[1] Caldwell's counsel withdrew in July 2013, and Caldwell represented himself thereafter.

[2] Despite the dismissal of the forfeiture action and the "release" of the seized currency, Caldwell did not receive the money.  According to the government, the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3716, required that the seized currency first be applied to pay down delinquent non-tax debts Caldwell owed to the federal government and various state

5

In April 2015, after the dismissal of the forfeiture action, Caldwell filed a motion for default judgment against the defendants on his claims, despite his earlier representation that dismissal without prejudice was "fair and just." This motion was docketed as a motion for clerk's entry of default and denied by a deputy clerk.

On April 15, 2015, the district court adopted the magistrate judge's R&R and dismissed the complaint "without prejudice." The court determined that the forfeiture action, which the government had voluntarily dismissed, provided Caldwell with an adequate forum to address his purported injury, so he did not state a § 1983 claim. The court granted Caldwell leave to proceed *in forma pauperis* on appeal.

On appeal, Caldwell argues that the district court erred by dismissing his complaint for failure to state a claim. Liberally construing his appellate brief, we find that he contends that the defendants violated his Fourth Amendment rights by unlawfully detaining him, searching his luggage, and seizing his property.

A district court's *sua sponte* dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) is reviewed *de novo*. *Troville v. Venz*, 303 F.3d 1256, 1259 (11th Cir. 2002). Section 1915(e) provides that an *in forma pauperis* action

---

courts. Caldwell separately appealed from the civil forfeiture proceeding. That appeal is traveling under No. 15-15311.

or appeal shall be dismissed at any time if it fails to state a claim for which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). We liberally construe the filings of *pro se* parties. *Campbell v. Air Jamaica Ltd.,* 760 F.3d 1165, 1168 (11th Cir. 2014).

Caldwell's complaint, liberally construed, presents two distinct claims. First, Caldwell alleged that the defendants violated due process by retaining his seized property. We have stated that "[a] complaint of continued retention of legally seized property raises an issue of procedural due process under the Fourteenth Amendment." *Case*, 555 F.3d at 1330. This type of claim fails where an adequate post-deprivation remedy is available, such as a civil cause of action for conversion. *Id.* at 1331. Thus, the district court correctly concluded that no procedural due-process violation had occurred because Caldwell had adequate post-deprivation remedies for the alleged wrongful taking of his property. *Id.*

Second, Caldwell alleged that the searches and seizures themselves were unlawful. Such a claim arises under the Fourth Amendment and is not defeated by the existence of an adequate post-deprivation remedy. *Byrd v. Stewart*, 811 F.2d 554, 555 (11th Cir. 1987) (distinguishing "unlawful retention" claims from "unlawful seizure" claims and remanding where the district court failed to address the Fourth Amendment claim); *see also Gilmere v. City of Atlanta*, 774 F.2d 1495,

1501–02 (11th Cir. 1985) (*en banc*), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989).

Here, the district court did not address whether Caldwell stated a claim under the Fourth Amendment. And viewed in his favor, his allegations suggest that state law-enforcement officers acting under color of state law detained him without probable cause or reasonable suspicion and then unlawfully searched his luggage and seized his personal property, in violation of the Fourth Amendment. *See Byrd*, 811 F.2d at 555. Because Caldwell's allegations appear to state a viable Fourth Amendment claim under § 1983, we vacate and remand for further proceedings on this claim.

In remanding Caldwell's Fourth Amendment claim, we recognize that Caldwell told the district court in his response to the magistrate judge's R&R, that dismissal was "fair and just." Normally, this representation might be sufficient to apply the doctrine of invited error, which prohibits a party from challenging a ruling that the party expressly invited. *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1293–94 (11th Cir. 2002).

Nevertheless, liberally construing Caldwell's filings, we cannot conclude that he invited the court to dismiss his complaint without addressing his Fourth Amendment claim. Given the title of the magistrate judge's R&R, "Preliminary Report of Magistrate Judge," and the fact that the R&R addressed Caldwell's

unlawful-retention claim only, it is ambiguous whether Caldwell understood the R&R to recommend a final adjudication of his complaint or just dismissal of the due-process claim.  Moreover, Caldwell's agreement with the R&R appears to have been based on his belief that he could obtain relief in the forfeiture action, which was dismissed by the government shortly after Caldwell filed his response to the R&R.  After the voluntary dismissal, Caldwell filed a motion for default judgment on his complaint, indicating that he wished to proceed with his complaint.  Given the ambiguous and contingent nature of Caldwell's position on whether dismissal was appropriate, we conclude that the doctrine of invited error does not apply.[3]

In sum, because Caldwell's complaint asserted a Fourth Amendment claim under § 1983 that was not addressed by the district court, we vacate and remand for further proceedings on this claim.

**VACATED AND REMANDED.**

---

[3] We also conclude that Caldwell has not otherwise waived his challenge to the district court's order.  Eleventh Circuit Rule 3-1, which took effect on December 1, 2014, provides that "[a] party failing to object to a magistrate judge's findings or recommendations . . . waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object."  11th Cir. R. 3-1 (emphasis added).  Before Rule 3-1 went into effect, we reviewed *de novo* a magistrate judge's legal conclusions in a report and recommendation even if the party failed to object to them.  *See Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Here, the magistrate judge's R&R did not give Caldwell clear notice of the consequences on appeal for failure to object to the legal conclusions in the R&R.  Accordingly, we review *de novo* the question of whether Caldwell failed to claim under § 1983.  *See Troville*, 303 F.3d at 1259.