**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10379
Non-Argument Calendar
_____

LAURA DANG,

*Plaintiff-Appellant,*

*versus*

POSTMASTER GENERAL,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-01426-LMM
_____

Before BRASHER, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Laura Dang,[1] proceeding *pro se*, appeals the district court's order denying her motion for summary judgment and granting summary judgment to the Postmaster General on her race and disability discrimination claims. Dang, who is an Asian-American USPS employee with a lung condition, was placed on leave during the COVID-19 pandemic because she refused to comply with USPS's mask mandate. On appeal, Dang argues that the district court erred because there were issues of material fact as to her race and disability discrimination claims. Dang also raises a retaliation claim and a discovery violation claim. After review, we conclude that there were no issues of material fact as to Dang's race and disability discrimination claims, Dang did not sufficiently raise her retaliation claim before the district court, and Dang did not move to compel discovery in the district court, so we affirm.

Dang has also moved to seal five exhibits. *See* Dkt. 29. Because those exhibits are already under seal, *see* Dkt. 27, we deny this motion as moot.

**I.**

Dang has sued the Postmaster General alleging violations of Title VII of the 1964 Civil Rights Act and the 1990 Americans with Disabilities Act. She alleged that USPS reduced her wages, forced her to work under terms and conditions that differed from similarly

---

[1] On June 9, 2025, Dang filed a notice of name change. Her filings continue to use "Laura Dang" as the named party, though she signs filings using her changed name, Kieu Trinh Mack.

situated employees, harassed her, and failed to accommodate her disability.

Following discovery, Dang moved for summary judgment and the Postmaster General cross-moved for summary judgment. The summary judgment record reflects the following:

During the COVID-19 pandemic, USPS directed all employees to wear face coverings when they could not stay six feet away from others. USPS explained that a face shield may be a reasonable accommodation, and that if an employee had medical documentation indicating that she could not wear any face covering, the District Reasonable Accommodation Committee would assess whether she could socially distance or be reassigned to a position that would allow for social distancing. USPS added that if these accommodations were impossible, and if no other accommodations would "not impose an undue hardship on the Postal Service, the employee must remain out of work."

Dang is a mechanic at USPS and has a lung condition called bronchiectasis. Dang testified that one time after she wore a face mask for several hours at work, she coughed up blood, had trouble breathing, and felt dizzy, nauseated, and sleepy. Dang also testified that during the pandemic, her coworkers (many of whom were non-white) increased their animosity toward her because they were more afraid of catching COVID from someone who is Asian (although her coworkers never mentioned anything about COVID-19 coming from Asia).

Two of Dang's managers—Scott Schaffer and Tom Feaster—testified that employees at their facility had to wear face coverings because they could not stay six feet away from each other. Employees reported Dang and at least eight white male maintenance workers for not wearing face coverings. Feaster instructed those employees to follow USPS face covering guidance.

Dang testified that, after the issuance of the mask mandate, Schaffer threatened to walk her out if she did not put on a mask. She also testified that one of her coworkers had told Schaffer that Dang was the "leader," "snake," or "head of snakes" among the employees who didn't wear masks. Dang testified that she told Schaffer about her lung condition. Schaffer said nothing about Dang's race or about COVID-19 coming from Asia. Around that time, Schaffer also instructed a nearby employee, Charles Matheny, to put on a mask.

Shortly after, Schaffer again threatened to walk Dang out if she did not wear a mask, and Dang put on her mask. Schaffer remembered seeing others without masks but said that they put their masks on when told. Dang filed an EEO complaint the next day, alleging discrimination based on race, color, sex, religion, national origin, and her lung condition.

A few weeks later, Feaster also told Dang to put a mask on. Dang testified that she told him she had a medical reason for not wearing a face covering. Dang testified that Feaster told her that she could not go on the floor without a face covering, asked her to follow him to his office, and repeated this instruction. Dang

reasserted that she had a disability preventing her from wearing a mask, and Feaster told her he would have to walk her out if she did not wear a mask. Dang asked Feaster to put this in writing, and he typed a letter for her before escorting her out. Feaster never mentioned Dang's race or COVID-19 coming from China. That same day, Feaster put Richard Waller (a white man) on emergency placement for refusing to wear a mask. USPS later allowed Waller to return to work because, pursuant to a union settlement, Waller agreed to wear a mask.

Feaster's letter stated that Dang had been placed on emergency placement in unpaid off-duty status for her failure to obey a direct order. Later that day, Feaster sent a second letter, rescinding the first and notifying Dang that she was on emergency placement because she had refused to wear a face covering. Feaster testified that the first letter was rescinded because it should have been written up by the labor department and it needed to be in a certain format. Feaster sent another letter scheduling an investigative interview in three days. During the interview, Dang brought up her lung condition (according to Feaster, for the first time) and Feaster offered to arrange a meeting with the District Reasonable Accommodation Committee. Feaster emailed Cynthia Davis in labor relations, stating that Dang and another maintenance employee (whose name had been redacted) were requesting accommodations. Dang submitted a reasonable accommodation request, requesting that she not be required to wear a mask or shield because she could maintain social distancing.

Shanina Spearman, a Committee member, testified that Dang's doctor submitted a medical assessment for Dang, which asserted that prolonged mask wearing affected Dang's "lung/respiratory status." The assessment also opined that Dang should be allowed to place the mask around her mouth, exposing her nose when she worked at least six feet from others, and that Dang should avoid prolonged masking of her nostrils. Dang had not discussed a face shield with her doctor.

Louis Hulse testified that he was not part of the Committee hearing Dang's accommodation request, but Feaster stated that he thought Hulse was involved. The Committee proposed Dang wear a face shield. Dang stated that she couldn't wear any face covering. The Committee suggested Dang use her leave, which she accepted.

A few days later, Dang submitted an EEOC complaint alleging discrimination based on race, religion, national origin, retaliation, disability, and genetic information.

Over the next year, Dang used paid leave and then unpaid leave until USPS lifted the mask mandate. During this time, she received pictures from someone she could not remember depicting her coworkers not wearing masks or tucking their masks under their chins. Dang said she recognized the people but could not recall many of their names. Dang also provided statements from coworkers stating that they had seen non-white employees not wearing masks, that management enforced the mask mandate more strictly with white and Asian employees, and that

management was lenient with employees who were "liked, in authority, or connected."

On January 6, 2022, the EEOC sent Dang a right to sue letter, which her amended complaint asserted that she received the same day.

A few months later, the maintenance operations manager told Dang to report to work or risk reprimand. She returned to work and received the same pay as when she was put on leave.

Dang sued USPS and then moved for summary judgment, arguing that USPS discriminated against her due to her race and disability. The Postmaster General responded that Dang's motion violated court rules because it lacked record citations. Dang replied that she had limited time and resources.

The Postmaster General also moved for summary judgment, arguing that Dang did not timely file her complaint because she had received the right to sue letter on January 6, 2022, and filed her lawsuit on April 12, 2022, USPS did not discriminate against Dang, and USPS offered reasonable accommodations. Dang responded that her complaint was timely because she received the right to sue letter on January 13. She stated that USPS selectively enforced the mask mandate, there were alternative accommodations that USPS should have explored (such as roping off her work area), and the rescinded letter showed that USPS's justification for her emergency placement was pretextual.

A magistrate judge issued a Report and Recommendation recommending that the district court deny Dang's motion and

grant summary judgment for the Postmaster General. Dang objected in a 35-page objection with over 100 pages of exhibits, arguing that the R&R misrepresented USPS policy and the reasonableness of her accommodation. As the Postmaster General noted in a motion to exclude, Dang's objection violated court rules by exceeding the page limit and failing to cite to the record.

The district court adopted the R&R, denying Dang's motion for summary judgment and granting the Postmaster General's motion. As the court found, Dang was not subject to racial discrimination because her three-day unpaid suspension was the only adverse employment action supported by the record and race did not motivate that suspension. The court also found that Dang was not subject to disability discrimination because she was offered two reasonable accommodations (one of which she accepted) and was responsible for the breakdown in the Committee's interactive process. The court discounted Dang's objection to the R&R, explaining that it violated court rules and failed on the merits.

Dang appealed.

## II.

We "review a district court's ruling on cross motions for summary judgment *de novo*, viewing the facts in the light most favorable to the nonmoving party on each motion." *Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n*, 127 F.4th 1294, 1301 (11th Cir. 2025). Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Id.* "A mere scintilla of evidence

supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation modified).

## III.

Dang argues that the district court erred in granting summary judgment to the Postmaster General for four reasons: first, she says there were disputes of material fact as to her race discrimination claim. Second, she says there were disputes of material fact as to her disability discrimination claim. Third, she says USPS retaliated against her for filing her EEO complaint. Fourth, she says the district court failed to address Dang's claims that the Postmaster General impeded discovery. We address each argument in turn.

### A.

We start with the issue of Dang's failure to comply with Federal Rule of Appellate Procedure 28 because of her lack of citations to the record and to legal authority. An appellant's brief must contain their "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). *Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will be liberally construed. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But a court may not "serve as *de facto* counsel for a party [or] rewrite an otherwise deficient pleading in order to sustain an action." *Campbell*, 760 F.3d at 1168–69.

The Postmaster General contends that we should affirm solely based on Dang's noncompliance with Rule 28. Red Br. at 23. Although Dang does not cite to the record or any authority in her initial brief, in violation of Rule 28, we consider her appeal on the merits because she identifies the issues she wishes to appeal: the summary judgment against her race and disability discrimination claims, as well as her retaliation and discovery claims.

Dang also alleges, only in her reply brief, that the district judge was biased because she improperly resolved disputed facts against Dang. We do not consider issues raised for the first time in a party's reply brief. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). Because Dang has raised this bias allegation for the first time in her reply brief, we will not consider it.

*B.*

We now move to the merits of Dang's race discrimination claim. Dang argues that USPS shifted its justification for her removal and treated a similarly situated employee (Waller) more favorably. She further argues that USPS's claim that she posed a safety risk was speculative because she saw other employees without masks and other facilities did not have mask mandates. She adds that the Postmaster General's reasons for removing her were pretextual because of conflicting testimony about who was involved in the Committee meeting, conflicting testimony about when Feaster knew of her disability, and USPS's failure to provide a reasonable accommodation.

The Postmaster General responds that there was no race-based adverse employment action because Dang's emergency placement was based on her non-compliance with the mask mandate and Dang's paid leave was the reasonable accommodation that she selected. The Postmaster General also contends that Waller is not an appropriate comparator because unlike Dang, he agreed to wear a face mask.

Dang replies that her emergency placement violated USPS policy because it happened before her investigative interview, and she was forced into accepting leave as an accommodation.

Title VII provides that "all personnel actions affecting [federal] employees . . . shall be made free from any discrimination" based on race. 42 U.S.C. § 2000e-16(a) (citation modified). We have held that section 2000e-16(a) imposes different requirements for federal employees' discrimination claims than are imposed in other Title VII cases. *See Babb v. Sec'y, Dep't of Veterans Affs.* ("*Babb II*"), 992 F.3d 1193, 1198–204 (11th Cir. 2021). As we explained in *Babb II*, if "discrimination plays any part in the way a decision is made, then that decision . . . is not made in a way that is untainted by such discrimination." *Id.* at 1199 (quoting *Babb v. Wilkie* ("*Babb I*"), 589 U.S. 399, 406 (2020)) (citation modified).

Generally, inadmissible hearsay cannot be used to defeat a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012). Furthermore, a plaintiff cannot carry her summary judgment burden by asserting self-serving allegations without personal knowledge. *Stewart v. Booker T.*

*Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000). When presenting an item of evidence, a proponent "must produce evidence to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Dang has not shown a dispute of material fact as to her race discrimination claim because there is no evidence that race played any part in USPS's decision. Dang argues that the justification for her removal shifted because USPS rescinded its first letter to her, but the two letters are consistent in explaining that USPS placed Dang on emergency placement because she refused to wear a mask. Dang also contends that she, an Asian-American woman, was treated differently than Waller, a white man. But the undisputed record proves she was not. Feaster walked Waller out on the same day that he walked Dang out, and Waller was allowed to return only because he agreed to wear a mask.

Though Dang asserts that other employees without masks were not walked out, she supports her assertion only with photos that she received from an unknown source. Dang did not take these photos and cannot name many people in them. Without more proof that the photos are what she claims they are, Dang cannot authenticate the photos and they are inadmissible. *See* Fed. R. Evid. 901(a). Dang also relies on statements from coworkers, which are inadmissible hearsay because they are out of court statements presented for the truth of the matter asserted. Fed. R. Evid. 801(c).

We also do not credit Dang's contention that there was inconsistent testimony about which USPS managers were involved

in the Committee meeting. Feaster merely testified that he "thought" Hulse was in the Committee meeting and Hulse then testified that he was not. No one testified that Hulse was definitively in the Committee meeting. In sum, no evidence reflects that USPS discriminated against Dang based on her race.

*C.*

Next, we move to Dang's argument that there were disputes of material fact as to her disability discrimination claim. Dang argues that USPS did not provide her a reasonable accommodation, she did not receive an interactive process, and USPS did not support its claim of undue hardship.

The Postmaster General responds that the face shield accommodation was reasonable because Dang's medical documentation indicated only that she should avoid prolonged masking of her nostrils. The Postmaster General adds that USPS also offered leave, which Dang accepted. The Postmaster General concludes that USPS did not need to establish undue hardship because Dang could not show that the accommodations were unreasonable.

Dang replies that the Committee process came too late (after she was put on emergency placement) and the Committee failed to consider whether she could perform her duties without a face shield.

Section 504 of the Rehabilitation Act "prohibits covered employers from discriminating against employees based on their disabilities." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th

1327, 1333 (11th Cir. 2022); *see* 29 U.S.C. § 794(a). The Rehabilitation Act applies to federal agencies. *See* 29 U.S.C. § 791. "[C]ases involving the ADA are precedent for those involving the Rehabilitation Act." *Owens*, 52 F.4th at 1334 (citation modified). "Under the Rehabilitation Act, an employer must make a reasonable accommodation for an employee's known disabilities unless the entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business. *Id.*

"The Rehabilitation Act does not require employers to speculate about their employees' accommodation needs." *Id.* (citation modified). Instead, "to trigger an employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable." *Id.* "Only after the employee provides this information must the employer 'initiate an informal, interactive process' with the employee." *Id.* Employers are "not required to accommodate an employee in any manner that the employee desires." *Id.* (citation modified). "Under the ADA [or the Rehabilitation Act], an employer will not be liable for failure to accommodate if the employee is responsible for the breakdown of the interactive process." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020) (citation modified).

Dang's Rehabilitation Act claim is without merit because there is no dispute that USPS engaged in an interactive process and offered her a reasonable accommodation. This interactive process properly began only after Dang requested an accommodation

during her investigative interview. And it offered two accommodations for Dang, both of which were reasonable given her doctor's recommendation that she should not cover her nostrils with a mask for a long time, which a face shield would not do. Dang offered no evidence that she could not wear a face shield. Given Dang's refusal to wear a face shield, and undisputed testimony that she could not maintain a six-foot distance from others, permitting Dang to use leave until the mandate lifted was also reasonable. Further, Dang was responsible for the breakdown in the interactive process because, after the Committee offered her two accommodation options, she did not pursue the matter further.

Dang is also incorrect that USPS should have offered to rope off her work area. She never requested this accommodation, and the Rehabilitation Act does not require employers to speculate about what accommodations an employee might need or comply with whatever an employee requests.

Thus, there is no dispute of fact that would support Dang's disability discrimination claim.

### D.

Next, we consider Dang's argument that USPS retaliated against her for filing her EEO complaint. Dang argues that her adverse treatment "came on the heels of her filing an EEO complaint," indicating retaliatory intent. The Postmaster General responds that Dang did not assert a retaliation claim below and cannot raise this claim for the first time on appeal.

We have consistently held that issues and arguments "not raised in the district court and raised for the first time in an appeal will not be considered." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citation modified). Additionally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). An appellant abandons a claim if she makes only passing references to it or raises it in a perfunctory manner without supporting authority. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014).

The Postmaster General is correct that Dang did not raise her retaliation claim before the district court. Dang referenced retaliation only three times before the district court (in her initial disclosure, in her EEOC complaint, and in her first deposition). She did not raise it in her initial complaint, motion for summary judgment, or any responses to the summary judgment motions. She also abandoned this issue on appeal by making only passing references to it. Accordingly, we need not consider her retaliation claim.

E.

Finally, we address Dang's argument that the district court erred by failing to address her claims that the Postmaster General impeded discovery. Dang argues that the Postmaster General improperly served discovery by sending it to the wrong address, redacting evidence, and filing documents electronically even though she did not receive e-notifications.

We review discovery issues for an abuse of discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570

(11th Cir. 1992). A party may move for an order compelling discovery and such a motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

Dang did not file any motion to compel discovery; instead, she appears to have raised this issue to bolster her discrimination claims. But even if we liberally construed Dang's arguments as a motion to compel discovery, any such motion would be deficient as it did not include the required certification under Rule 37. Dang was also aware that she could move for an extension of time if she needed it to sort through discovery. Accordingly, the district court did not need to consider her assertions as a motion to compel discovery.

## IV.

For these reasons, the district court's judgment is **AFFIRMED**. Dang's motion to seal exhibits is **DENIED** as moot.